UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN B. AUBREY and BRIAN E. VODICKA, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-0056-B |
| D MAGAZINE PARTNERS, L.P., d/b/a D MAGAZINE; ALLISON MEDIA, INC.; JAMIE L. THOMPSON; ROBERT L. ERMATINGER, JR.; SCOTT ROBERT SAYERS; ERIC VAUGHN MOYE; CITY OF DALLAS; DALLAS COUNTY, TEXAS; and DOES 1-20, all whose true names are unknown, | § § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Disqualify Haynes and Boone, LLP (Doc. 34). For the following reasons, the Court **DENIES** the motion.[1]

## I.

## BACKGROUND

Plaintiffs seek to disqualify Haynes and Boone, LLP ("the firm") from representing Defendants D Magazine Partners, L.P., Allison Media, Inc., and Jamie Thompson (Defendants) in this litigation. The parties agree that in April 2013, the firm entered into an attorney–client relationship with Plaintiffs. Doc. 34, Pls.' Mot., 4–5; Doc. 48, Defs.' Resp., 8. They signed a "limited

---

[1] Nothing in this opinion should be construed as opining on the merits of Plaintiffs' case against Defendants; the only question before the Court today is that raised by the disqualification motion.

engagement" retention agreement to evaluate an amended complaint in a RICO action against North American Title Company and individuals in the Western District of Texas. Doc. 34, Pls.' Mot., 12 (Ex. A, Engagement Letter); Doc. 48, Defs.'s Resp., 1–2; Doc. 49-1, Defs.' App., 76–131 (the 2013 Second Am. Compl.). No Haynes and Boone attorney appeared in that case, and the firm's involvement ended in December 2013. Doc. 49-1, Defs.' App., 1–75 (docket sheet from the 2013 litigation); Doc. 48, Defs.' Resp., 2–3.

The firm now represents Defendants in this case, which is based on events in 2016 and 2017, around the time when Ira Tobolowsky died in a "suspicious" fire. Doc. 54, Am. Compl. ¶¶ 1, 35. Central to Plaintiffs' claims against Defendants is an article published by D Magazine, and authored by Defendant Thompson. *Id.* ¶¶ 186–249; Doc. 49-1, Defs.' App., 133 (Thompson Decl., ¶ 2). While this article centers on Tobolowsky's death, Thompson does mention the 2013 RICO suit, a fact that Plaintiffs incorporate into their complaint. Doc. 54, Am. Compl. ¶ 198–99(k). Thompson declares that the information she obtained and published about the 2013 lawsuit came from publicly available court records and court documents in other proceedings, including Plaintiff Aubrey's deposition, and not from the firm. Doc. 49-1, Defs.' App., 134–35 (Thompson Decl., ¶¶ 4–5). Nonetheless, Plaintiffs fear that the firm's involvement in the current litigation creates a risk that their confidential information will be disclosed. They move for the firm's disqualification based on this fear and their assertion that there is an impermissible substantial relationship between the two suits. Doc. 34, Pls.' Mot., 4–6.

As this issue is fully briefed, the Court addresses Plaintiffs' motion.

## II.

## LEGAL STANDARD

Motions to disqualify are substantive in nature and are thus decided under federal law. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). "When considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself," *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009); although "local rules are not the 'sole' authority governing motions to disqualify counsel." *U.S. Fire Ins. Co.*, 50 F.3d at 1312. For example, attorneys practicing in the Northern District of Texas are subject to the Texas Disciplinary Rules of Professional Conduct. *See John Crane Prod. Sols., Inc. v. R2R & D, LLC*, 2012 WL 3453696, at *2 (N.D. Tex. Aug. 14, 2012) (citing N.D. Tex. Civ. R. 83.8(e)). Moreover, the Fifth Circuit recognizes the American Bar Association's Model Rules of Professional Conduct as the national standard to consider in reviewing motions to disqualify. *In re ProEducation*, 587 F.3d at 299. Therefore, when deciding a motion to disqualify, this Court "consider[s] both the Texas Rules and the Model Rules." *Id.*[2]

ABA Model Rule 1.9 prohibits a firm from both: being adverse to a former client in a substantially related manner without the former client's consent; and divulging confidential information:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
> …

---

[2] Plaintiffs cite Florida law in their motion without argument as to why Florida law applies. Doc. 34, Pls.' Mot., 6–8. However, they admit that the Texas rules are similar, and the Court sees no reason why the outcome in this case would differ under Florida's standards. *See id.* at 6.

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> > (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> > (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

MODEL RULES OF PROF'L CONDUCT R. 1.9 (2019) (emphasis added).

"ABA Rule 1.9 is identical to Texas Rule 1.09 in all important respects," *John Crane*, 2012 WL 3453696, at *2 (quoting *In re Am. Airlines*, 972 F. 2d 605, 615 n.2 (5th Cir. 1992)); which states, in relevant part:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client: . . . (2) if the representation in reasonable probability will involve a violation of Rule 1.05 [governing confidentiality of information]; or (3) if it is the same or a substantially related matter.

TEX. DISCIPLINARY R. OF PROF'L CONDUCT 1.09(a)(2)–(3).

The Fifth Circuit applies a two-part test when determining whether disqualification is required on the basis of a substantial relationship: "(1) an actual attorney–client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F. 2d at 614. "[T]he party seeking disqualification bears the burden of proving that the present and prior representations are substantially related." *Id.* In order to meet its burden, the moving party must specifically establish that the prior and current representations involve overlapping "subject matters, issues, and causes of action," and the court must engage in a "painstaking analysis of the facts and precise application of precedent." *Id.* (internal quotations omitted). "Once it is established that the prior matters are substantially related to the present case, the court will irrebuttably presume that

relevant confidential information was disclosed during the former period of representation." *Id.* (internal quotations omitted). Even if the matters are not substantially related, a court should consider whether confidential information obtained in the prior representation may be divulged. *Id.* at 615. "[T]he moving party must identify the disclosures it made to its former attorney during its former representation and demonstrate that such disclosures are relevant to and jeopardized by its former attorney's current representation of the opposing party." *Hutton v. Parker-Hannifin Corp.*, 2016 WL 4140736, at *6 (S.D. Tex. Aug. 4, 2016) (alterations incorporated) (internal quotations omitted). Conclusory assertions devoid of detail and evidentiary support fail to satisfy the test. *See Church of Scientology of Cali. v. McLean*, 615 F.2d 691, 692–93 (5th Cir. 1980); *Ortiz v. Jichasa, LLC*, 2017 WL 8181560, at *3 (W.D. Tex. Apr. 25, 2017) *report and recommendation adopted*, 2017 WL 8161004 (W.D. Tex. May 11, 2017).

All in all, disqualification is a severe sanction. "Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration." *U.S. Fire Ins. Co.*, 50 F.3d at 1313. Courts must consider the particular facts of each case in the context of the relevant ethical guidelines and with deference to a litigant's rights. *In re ProEducation*, 587 F.3d at 300 (citing *U.S. Fire Ins. Co.*, 50 F.3d at 1314).

### III.

### ANALYSIS

Plaintiffs argue that Haynes and Boone should be disqualified because: (1) this lawsuit has a substantial relationship to the firm's prior representation of Plaintiffs; and (2) there is a reasonable probability that the firm would divulge Plaintiffs' relevant confidential information to Defendants. Doc. 34, Pls.' Mot., 4–6. Defendants argue that Plaintiffs have failed to meet their burden to

establish either ground for disqualification. Doc. 48, Defs.' Resp., 7.

    A.    *Substantial relationship*

Defendants concede that in 2013, an attorney–client relationship existed. But reviewing the facts, the Court finds Plaintiffs have failed to carry their burden to show a substantial relationship between the firm's former representation of Plaintiffs and the current dispute. It is Plaintiffs' burden to specifically delineate the overlapping subject matters, issues, and causes of action.

In the 2013 lawsuit, Plaintiffs brought only RICO and securities law claims against unrelated plaintiffs for a real estate deal gone bad.[3] The firm was hired in a limited scope and never appeared in the case, and its involvement ended in December 2013, with a final invoice the following January. Doc. 34, Pls.' Mot., 19 (Ex. B, Invoice); Doc. 48, Defs.' Resp., 3. Of the $1 million in fees Plaintiffs say that they spent on that suit, only $14,208.54 was paid to the firm.[4] Doc. 34, Pls.' Mot., 4.

In this current suit, Plaintiffs have brought claims against unrelated parties over unrelated issues. The Court has found only two mentions to the prior suit in Plaintiffs' 102-page complaint, in which Plaintiffs assert that Defendants' article falsely reported the total cost of that litigation. Doc. 54, Am. Compl. ¶¶ 198–99(k). Plaintiffs' claims are instead based overwhelmingly on events in 2016 and 2017, revolving around Tobolowsky's death. *Id.* ¶¶ 1, 35. There is no overlap of claims between

---

[3] The causes of action in the second amended complaint in the 2013 litigation included: (1) RICO violations; (2) negligence and gross negligence; (3) breach of fiduciary duties (including aiding an abetting); (4) fraud/fraudulent inducement; (5) negligent misrepresentation; (6) Texas Securities Act violations; and (7) conspiracy to commit fraud. Doc. 49-1, Defs.' App., 102–28.

[4] Plaintiffs allege that they spent only $1 million on the 2013 suit, a fact they allege the firm should have known because during the 2013 litigation they allegedly shared with one of the firm attorneys "that $1 million was their absolute limit to spend in legal fees." Doc. 68, Pls.' Reply, 5. But the final cost of litigation often does not match what parties hope to spend and Plaintiffs offer no other explanation for how the firm should have known the total fees in the 2013 litigation. Whether or not the firm knew of the total cost of the 2013 litigation—a fact necessarily determined after the firm's prior representation of Plaintiffs ended—does not create a substantial relationship with the current litigation.

the RICO case and this case, which asserts numerous claims against Defendants (*e.g.*, invasion of privacy, intentional infliction of emotional distress, defamation). *See generally id.* The mere fact that Thompson included allegedly defamatory information about the total cost of the 2013 lawsuit in the article that forms the basis of this suit does not create a *substantial* relationship between the two suits. Plaintiffs' two cases are more dissimilar than even those cited by Defendants in their response. *See Hutton*, 2016 WL 4140736 at *4–6 (collecting cases and finding no substantial relationship between a patent dispute and employment dispute); *McLean*, 615 F.2d at 692–93 (finding no substantial relationship between a zoning dispute and slander dispute even when the cases involved overlapping allegations and overlapping witnesses). Plaintiffs attempt to distinguish *McLean*, arguing that *if* the Fifth Circuit in that case had been reviewing a motion to disqualify the attorney's new firm—not just the attorney who worked on the prior case—and *if* the defendants had defamed the plaintiff based on representations about the former zoning suit, the Fifth Circuit would have disqualified the firm from participating in a subsequent defamation suit. Doc. 68, Pls.' Reply, 7–6. But this takes *McLean* too far afield. *See McLean*, 615 F.2d at 692–93 (describing how the motion to disqualify the firm was previously denied, and finding the appeal as to the attorney's disqualification denial frivolous). The Court is unpersuaded by Plaintiffs' attempt to use *McLean* to conclude how the Fifth Circuit might rule in a different factual scenario. In addition, Plaintiffs take issue not with the firm's knowledge of the subject matter of the 2013 RICO case, but simply the firm's alleged knowledge of the total cost of that case. *See* Doc. 68, Pls.' Reply, 3–4 (quoting and elaborating on the allegedly defamatory statement).

In sum, the Court finds that the firm's representation of Plaintiffs in 2013 was not substantially related to the current suit, and thus this is not a ground for disqualification.

B.  *Disclosure of confidential information*

Because the Court holds that Plaintiffs have failed to show a substantial relationship exists between the lawsuits, there is no irrebutable presumption that confidential information would be disclosed. *See In re Am. Airlines*, 972 F.2d at 614. And Plaintiffs have not provided evidence that the firm has confidential information about this current case that it could divulge to Defendants and prejudice Plaintiffs. *See McLean*, 615 F.2d at 692–93 (finding no evidence that confidential information from a zoning dispute would be disclosed in a subsequent slander dispute).

For example, Thompson states in her declaration that the information she obtained and published about the 2013 lawsuit came from publicly available court records and court documents in other proceedings, including Plaintiff Aubrey's deposition. Doc. 49-1, Defs.' App., 134 (Thompson Decl., ¶¶ 4–5). Both the Texas and ABA model rules permit the use of information that is generally known and publically available. In reply briefing, Plaintiffs argue that these court records were actually not made public and misstated the cost of the prior litigation—the true cost of which they allege the firm knew. Doc. 68, Pls.' Reply, 4–5. Plaintiffs describe conversations they allegedly had with one of the firm's attorneys during the representation in which Plaintiffs told her that they would not spend more than $1 million in legal fees. *Id.* at 5. But, as stated above, the final cost of litigation does not necessarily align with what parties expect or hope to spend, and Plaintiffs offer no other explanation for how the firm should have known the total Plaintiffs spent in the 2013 litigation. And at no point do Plaintiffs attach affidavits or other evidence to support these allegations, except for the engagement letter and an invoice attached to their motion. Plaintiffs have not sufficiently shown that the total cost of litigation was confidential information—much less that the firm was privy to

it[5]—and thus, this is not a basis for disqualification.

The only specific information that Plaintiffs identify and show that the firm was privy to was the firm's retainer and the firm's total billing in the 2013 suit. *See* Doc. 34, Pls.' Mot., 4–5, 8. However, Plaintiffs themselves disclosed this in their motion, and none of that information is in dispute in the present suit. *See id.* at 5.

In sum, Plaintiffs fail to show how confidential information obtained from a brief representation on a RICO matter would be relevant or useful in this subsequent case that is based on unrelated facts arising years later. Plaintiffs' allegations of the confidential information the firm allegedly has and would, or could, use lack the requisite evidentiary support. In the absence of any concrete evidence showing that the firm had confidential information that would be disclosed, the Court finds that Plaintiffs have failed to establish the need for disqualification on this ground as well.

IV.

CONCLUSION

For the above reasons, the Court hereby **DENIES** Plaintiffs' Motion to Disqualify (Doc. 34).

**SO ORDERED**.

**SIGNED: May 14, 2019.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[5] On top of this, Plaintiffs themselves admit "it is obvious [the firm] did not share Plaintiffs' confidential information with D Magazine, because D Magazine published false information that presented Plaintiffs in a false light instead of the truth that was known to [the firm]." Doc. 68, Pls.' Reply, 6.