UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN B. AUBREY and <br> BRIAN E. VODICKA, <br><br> Plaintiffs, <br><br> v. <br><br> D MAGAZINE PARTNERS, L.P.; <br> ALLISON MEDIA, INC.; JAMIE L. <br> THOMPSON; ROBERT L. <br> ERMATINGER, JR.; SCOTT ROBERT <br> SAYERS; CITY OF DALLAS; DALLAS <br> COUNTY, TEXAS; and DOES 1-20, all <br> whose true names are unknown, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:19-CV-0056-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Amend Order (Doc. 126), filed on January 6, 2020. For the reasons that follow, the Court **DENIES** Plaintiffs' motion.

I.

BACKGROUND

Plaintiffs originally filed this lawsuit on January 8, 2019, bringing claims against Defendants D Magazine Partners, L.P.; Allison Media, Inc.; Jamie L. Thompson; Robert L. Ermatinger, Jr.; Scott Robert Sayers; Judge Eric Vaughn Moyé; City of Dallas; Dallas County; and Does 1-20.[1] *See* Doc.

---

[1] The Court hereinafter refers to Defendants City of Dallas, Robert L. Ermatinger, Jr., and Scott Robert Sayers collectively as "the City Defendants." Further, the Court refers to Defendants D Magazine Partners, L.P., Allison Media, Inc., and Jamie L. Thompson collectively as "the Media Defendants."

3, Compl. The following day, Plaintiffs corrected their complaint to eliminate duplicitous allegations. Doc. 4, Notice of Correction, 1. In response to Plaintiffs' complaint, all named Defendants filed motions to dismiss. *See* Doc. 21, Mot. to Dismiss; Doc. 29, Mot. to Dismiss; Doc. 31, Mot. to Dismiss; Doc. 32, Mot. to Dismiss. Subsequently, Plaintiffs sought to amend their complaint. *See* Doc. 47, Pls.' Mot. for Leave to File Am. Compl. Three days later—before this Court ruled on Plaintiffs' motion—Plaintiffs filed another motion for leave to amend the complaint, which Defendants opposed. *See* Doc. 50, Pls.' Mot. for Leave to File Second Am. Compl., 1–2. The Court granted the motion but noted that "subsequent requests for leave to amend will be more closely scrutinized, as is this Court's typical practice and per the Federal Rules of Civil Procedure." Doc. 52, Electronic Order.

Thereafter, all Defendants moved to dismiss the claims in the operative complaint. *See* Doc. 63, Mot. to Dismiss; Doc. 65 Mot. to Dismiss; Doc. 67, Mot. to Dismiss; Doc. 71, Mot. to Dismiss; Doc. 72, Mot. to Dismiss; Doc.73, Mot. to Dismiss. On June 20, 2019, the Court dismissed all claims against Defendant Judge Moyé. *See* Doc. 92, Mem. Op. & Order.

Subsequently, Plaintiffs sought leave to file a third amended complaint. *See* Doc. 102, Pls.' Mot. for Leave to File Third Am. Compl. The Court granted leave to amend only "insofar as they [sought] to include allegations of six newly-discovered search-warrant affidavits." Doc. 114, Order, 10. Further, due to "the limited nature of Plaintiffs' permitted amendments," the Court gave Plaintiffs two weeks—until December 3, 2019—to file their complaint in accordance with these parameters. *Id.* After the Court granted an extension requested by Plaintiffs, they still failed to file the third amended complaint by the new deadline. *See* Doc. 116, Electronic Order (stating Plaintiffs' complaint is due on December 6, 2019); Doc. 117, Mot. for Leave to Untimely File Third Am.

Compl.

When Plaintiffs then sought to file the third amended complaint after the deadline, the Court noticed substantial departures from the scope of amendment permitted by the Court's order. *See* Doc. 119, Order, 2. Accordingly, the Court denied Plaintiffs' motion to file the third amended complaint and instructed Plaintiffs to file a third amended complaint in conformity with the Court's previous order (Doc. 114) by December 16, 2019. *Id.* The Court warned Plaintiffs that failure to follow the Court's instructions would result in dismissal under Federal Rule of Civil Procedure 41(b). *Id.* at 3. Plaintiffs filed their revised third amended complaint shortly thereafter. *See* Doc. 121, Pls.' Third Am. Compl. While the Court notes some changes in word choice from the second to the third amended complaint, the third amended complaint substantially conforms to the Court's prior orders. Thus, the third amended complaint (Doc. 121) is the operative complaint in this case.

But before even filing this third amended complaint, Plaintiffs filed a motion for leave to file a *fourth* amended complaint. *See* Doc. 120, Pls.' Mot. for Leave (emphasis added). The Court denied this motion, explaining that Plaintiffs unduly delayed in seeking to add new claims to their operative complaint. *See* Doc. 122, Order, 4–5.

Now, Plaintiffs urge the Court to "modify[] certain dicta" from its order denying leave to file a fourth amended complaint, "but not the ruling." Doc. 126, Mot. to Amend, 1. More specifically, Plaintiffs suggest that the Court "unfairly characterized" Plaintiffs' failure to seek leave to add Racketeer Influenced and Corrupt Organizations Act (RICO) and estoppel claims sooner as undue delay. *See id.* at 2. The City Defendants, Defendant Dallas County, and the Media Defendants filed responses opposing Plaintiffs' request for reconsideration. *See* Doc. 137, City Defs.' Resp.; Doc. 134, Def. Dallas Cty.'s Resp; Doc. 138, Media Defs.' Resp. Thereafter, Plaintiffs filed reply briefs. *See* Doc.

144, Pls.' Reply; Doc. 145, Pls.' Reply; Doc. 146, Pls.' Reply. Accordingly, this motion is now ripe for review.

II.

**LEGAL STANDARD**

"'[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration.'" *Mehar Holdings, LLC v. Evanston Ins. Co.*, 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016) (quoting *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997)). "Rather, courts treat such motions as motions pursuant to either Rule 54(b), 59(e), or 60 depending on when the motion is brought and the type of order that the party requests the Court to reconsider." *Id.* The denial of leave to amend a complaint is an interlocutory order, see *Fleming v. Harco Nat'l Ins. Co.*, 1993 WL 347031, at *1 (5th Cir. Aug. 12, 1993) (per curiam), and a motion to reconsider such an order is governed by Federal Rule of Civil Procedure 54(b). *See Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017).

"Pursuant to Rule 54(b), interlocutory orders may be 'revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Mehar*, 2016 WL 5957681, at *2 (quoting FED. R. CIV. P. 54(b)). Although "[n]either Rule 54(b) nor the Fifth Circuit articulates a standard by which to decide" a motion for reconsideration under Rule 54(b), "the Fifth Circuit has explained that when a district court rules on an interlocutory order, it is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (internal quotation marks omitted) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010)).

"Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is

unclear, whether to grant such a motion rests within the discretion of the court." *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009). And "[t]he district court's discretion in this respect is broad." *Brown v. Wichita Cty.*, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011) (citing *Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414–15 (5th Cir. 1993)).

While "the standard would appear to be less exacting than that imposed by Rules 59 and 60 . . . [,] considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Dos Santos*, 651 F. Supp. 2d at 553 (citation omitted). Thus, motions for reconsideration "have a narrow purpose" and "are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Charalambopoulos v. Grammer*, 2016 WL 5942225, at *2 (N.D. Tex. Oct. 13, 2016) (quoting *Reneker v. Offill*, 2012 WL 3599231, at *1 n.1 (N.D. Tex. Aug. 22, 2012)). Reconsideration, like injunctive relief, is an "extraordinary remedy that should be used sparingly." *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (citation and quotation marks omitted).

## III.

## ANALYSIS

A.   *The Court Declines to Reconsider its Conclusion that Plaintiffs Unduly Delayed.*

The Court stands by its reasoning that Plaintiffs unduly delayed in seeking to add their RICO and estoppel causes of action. As to their RICO claims, Plaintiffs explain that they discovered the possibility of alleging RICO violations—a possibility based upon the discovery of the six additional search-warrant affidavits— only after filing their motion for leave to file a third amended complaint. *See* Doc. 126, Mot. to Amend, 3–4. Plaintiffs state that in the two months between seeking leave to file a third and fourth amended complaint, they "worked diligently to expand their understanding

of the use of the RICO statute and its application in their case." *Id.* at 4. Further, Plaintiffs point out that they "provided notice to all Defendants of the impending RICO claims via email" in November of 2019—the month between the Court's granting of partial leave to file a third amended complaint and the Court's denial of leave to file a fourth amended complaint. *Id.*

These explanations do not alter the Court's previous conclusion that Plaintiffs unduly delayed in seeking leave to add the RICO claims. *See* Doc. 122, Order, 4–5. The Court points out, once again, that this lawsuit is now one-year-old. *See* Doc. 3, Compl. And in the past year, this Court has given Plaintiffs numerous opportunities to amend their complaint. *See* Doc. 122, Order, 4–5. Further, Plaintiffs have offered no compelling reason—other than the fact that they were not yet up to speed on RICO allegations—for their failure to add the RICO claims sooner. *See* Doc. 126, Mot. to Amend, 3–4.

While Plaintiffs appear to suggest that the discovery of the six additional search-warrant affidavits provides the basis for their RICO claims, the Court is not convinced. While the Court acknowledges that Plaintiffs view the affidavits as support for their RICO allegations, Plaintiffs were already aware of five allegedly falsified search-warrant affidavits as early as April 29, 2019—over seven months before seeking leave to bring the RICO claims. *See, e.g.*, Doc. 50, Pls.' Second Am. Compl., ¶ 251. Further, the six additional search-warrant affidavits are from Defendant City of Dallas, yet in their proposed fourth amended complaint, Plaintiffs attempted to bring RICO claims against *all* Defendants. *See* Doc. 120, Pls.' Mot. for Leave, Ex. B, ¶¶ 762–82. Under these circumstances, the Court refuses to reconsider its finding that Plaintiffs unduly delayed in bringing their RICO claims.

Regarding their estoppel claim, Plaintiffs suggest that there was no undue delay because

"Plaintiffs had never been aware there was a basis to bring a claim for estoppel" prior to November 29, 2019. Doc. 126, Mot. to Am., 5. But this Court cannot repeatedly yield to the whims of Plaintiffs' newest discoveries in legal theories. Indeed, Plaintiffs appear to concede this in their reply brief, noting that they "realize and agree that ignorance of the estoppel claim cannot be used as an excuse for bringing the claim so late in this litigation." Doc. 144, Pls.' Reply, 2.

While this Court recognizes that "delay alone is an insufficient basis for denial of leave to amend," *undue* delay—delay that "prejudice[s]" Defendants or "impose[s] unwarranted burdens on the [C]ourt"—is a sufficient basis for denial. *See Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). Here, in light of Plaintiffs' repetitive amendments and the passage of time, the Court has found Plaintiffs unduly delayed in seeking to add their RICO and estoppel claims, and the Court will not reconsider this finding.

B.       *Additionally, the Court Finds the Addition of the RICO and Estoppel Claims Futile.*

In addition to finding that Plaintiffs unduly delayed in seeking to bring their RICO and estoppel claims, the Court also finds that such claims are futile. *See Hinds v. Orix Capital Mkts., L.L.C.*, 2003 WL 21350210, at *3 (N.D. Tex. June 10, 2003) (noting that courts consider "futility of amendment" in deciding whether to grant leave to amend) (citation omitted). "An amendment is futile if it fails to state a claim upon which relief can be granted." *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 2007 WL 9717289, at *1 (N.D. Tex. Jan. 16, 2007) (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000)). Below, the Court addresses the futility of the RICO and estoppel claims in turn.

### 1. The addition of Plaintiffs' proposed RICO claims would be futile because Plaintiffs do not sufficiently allege an enterprise among Defendants.

In their proposed fourth amended complaint, Plaintiffs sought to include claims for violations of RICO. *See* Doc. 120, Pls.' Mot. for Leave, Ex. B, ¶¶ 762–82. Specifically, Plaintiffs attempted to bring claims against all Defendants for violations of 18 U.S.C. § 1962(d), 18 U.S.C. § 1962(c), and 18 U.S.C. § 1962(b). *See id.* All three of these claims require: "1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993) (citation and quotation marks omitted) (emphases in original).

Plaintiffs' proposed fourth amended complaint fails to properly plead a RICO "enterprise"; thus, their RICO claims would be futile. In their proposed fourth amended complaint, Plaintiffs relied upon allegations from paragraphs 482 through 595 to support all three RICO claims. *See* Doc. 120, Pls.' Mot. for Leave, Ex. B, ¶¶ 762–82. In these paragraphs, Plaintiffs allege that Defendants comprise an "association-in-fact" and "were systematically linked with overlapping leadership, structural and financial ties, and continuing coordination." *Id.* ¶ 490. This enterprise, Plaintiffs allege, "is a formal legitimate ongoing organization, functioning as a continuing unit, pursuing an interrelated course of conduct, and with a common or shared purpose and continuity of structure and personnel." *Id.* ¶ 493. The "common link" among the members of the enterprise, Plaintiffs explain, "is the purpose and nature of their business, i.e. promoting perjured search warrant affidavits . . . and the publication of those falsified affidavits . . . ." *Id.* ¶ 492. Plaintiffs then proceed to alternatively plead ten different combinations of Defendants and non-parties in hopes of establishing the existence of an enterprise. *See id.* ¶¶ 495–503.

But these allegations of an enterprise fall short of those required to sustain Plaintiffs' RICO claims. "An association-in-fact enterprise '(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization[,] and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Oblio Telecom, Inc. v. Patel*, 2009 WL 1650481, at *4 (N.D. Tex. June 10, 2009) (citing, *inter alia*, *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995)). Because an association-in-fact enterprise "must have an existence separate and apart from the pattern of racketeering, proof of a pattern of racketeering activity does not necessarily establish a RICO enterprise." *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991) (citations omitted). Accordingly, Plaintiffs must "plead specific facts that establish that the association exists for purposes other than simply to commit the predicate acts." *Oblio*, 2009 WL 1650481, at *4 (citations omitted). Further, "a RICO plaintiff must plead the specified facts as to each defendant. It cannot . . . 'lump[] together the defendants.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019).

Here, Plaintiffs have not done so. Rather, Plaintiffs' allegations of an enterprise among Defendants are limited to allegations that Defendants have worked together to "frame Plaintiffs . . . by using perjured search warrant affidavits . . . ." Doc. 120, Pls.' Mot. for Leave, Ex. B, ¶¶ 489, 492. The allegedly false affidavits, however, also form the basis for Plaintiffs' allegations of predicate RICO acts. *See, e.g.*, *id.* ¶¶ 508, 510. While Plaintiffs allege additional predicate acts, they do not allege any additional purpose—beyond the framing of Plaintiffs—of the alleged association-in-fact. Thus, Plaintiffs have not sufficiently alleged the existence of an enterprise, see *Oblio*, 2009 WL 1650481, at *4 (citations omitted), as required to sustain their RICO claims. As a result, the addition of the RICO claims would be futile.

### 2. The addition of Plaintiffs' estoppel claim would be futile because Texas does not recognize a cause of action for estoppel based on Plaintiffs' allegations.

Though Plaintiffs sought to bring an estoppel claim in their proposed fourth amended complaint, see Doc. 120, Pls.' Mot. for Leave, Ex. B, ¶¶ 788–92, such a claim would be futile. Plaintiffs requested leave to bring "an affirmative claim of estoppel," because "estoppel goes to the heart of the Media Defendants' statute of limitation defense on Plaintiffs' defamation claims." Doc. 126, Mot. to Amend, 5. In essence, Plaintiffs alleged in their proposed fourth amended complaint that another court erred in dismissing Plaintiffs' claims against the Media Defendants; and now, the Media Defendants attempt to "rely on that error and escape liability . . . ." Doc. 120, Pls.' Mot. for Leave, Ex. B, ¶¶ 790–92. Moreover, Plaintiffs explain that "Plaintiffs will be injured if [the Media Defendants] are not estopped from dismissal based on Texas statute of limitations." *Id.* ¶ 792.

But Texas law does not recognize an affirmative "estoppel" claim under these circumstances, so the addition of it would be futile. Texas law does recognize equitable estoppel as a defense that can defeat an affirmative statute-of-limitations defense. *See Johnson v. Tena*, 2017 WL 2484353, at *3 (Tex. App.—Eastland June 8, 2017, no pet.). Nonetheless, such an equitable estoppel defense requires: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (2) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; and (5) who detrimentally relies on the representation or concealment." *Id.* (citations omitted).

Here, Plaintiffs do not allege facts to support any of these elements. *See* Doc. 120, Pls.' Mot. for Leave, Ex. B, ¶¶ 788–92. Thus, Plaintiffs' attempt to include an estoppel claim under Texas law would be futile.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Amend Order (Doc. 126).


**SO ORDERED.**

**SIGNED: February 10, 2020.**

 

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE