# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

STEVEN B. AUBREY, et al.,      §
     §
     Plaintiffs,      §
     §
v.      §      CIVIL ACTION NO. 3:19-CV-0056-B
     §
D MAGAZINE PARTNERS, L.P., et al.,      §
     §
     Defendants.      §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant Scott Robert Sayers's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 128) and Defendant Robert L. Ermatinger's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 129). For the reasons stated below, the Court **DENIES** Sayers's motion (Doc. 128) **WITHOUT PREJUDICE** to Sayers reasserting qualified immunity following narrowly tailored discovery. Likewise, to the extent Ermatinger seeks dismissal of Plaintiffs' 42 U.S.C. § 1983 claims brought against both Ermatinger and Sayers, the Court **DENIES** Ermatinger's motion (Doc. 129) **WITHOUT PREJUDICE**. But to the extent Ermatinger seeks dismissal of Plaintiffs' remaining claims against him, the Court **GRANTS** Ermatinger's motion (Doc. 129) and **DISMISSES** these claims **WITH PREJUDICE**.

# I.

# BACKGROUND[1]

A.    *Factual History*

1.    The Tobolowsky murder investigation

Plaintiffs, Steven B. Aubrey and Brian E. Vodicka, are a married couple that lived in Dallas, Texas, when the following events occurred. Doc. 121, Third Am. Compl. (TAC), ¶¶ 27 (5), 38 (6). On May 13, 2016, Ira Tobolowsky died in a suspicious early morning fire at his home. *Id.* ¶ 28 (5). Days later, the Dallas Police Department (DPD) contacted Vodicka about the murder. *See id.* ¶ 36 (6).

Next, over a five-month period that began in May 2016, Plaintiffs allege, City of Dallas and its employees "submitted 11 perjured affidavits for search warrants," each of which "involved Aubrey, Vodicka, or both." *Id.* ¶ 46 (7–8). According to Plaintiffs, Lieutenant Derrick Cherry of the Dallas Fire-Rescue Department authored two of the affidavits; Defendant–Detective Robert Ermatinger, Jr. of DPD authored three; and Defendant–Detective Scott Robert Sayers of DPD authored the remaining six. *See id.* ¶¶ 51–160 (8–38). When Aubrey complained to City of Dallas's Public Integrity Unit about the affidavits, he claims his complaint "was investigated and ignored . . . ." *Id.* ¶ 341 (76).

About one year after these events, Plaintiffs explain, Ermatinger had retired from DPD and "shar[ed] false information" with D Magazine, a local news outlet, about Plaintiffs and the

---

[1] Only pertinent facts for this motion to dismiss have been included for the sake of brevity. The third amended complaint consists of 487 paragraphs spanning 110 pages. Because the third amended complaint consists of inconsistent paragraph numbering, the Court cites the paragraph to which it refers, followed by the page number in parentheses, throughout this Order.

Tobolowsky murder investigation. *See id.* ¶ 45 (7). Plaintiffs allege that Ermatinger was "a constant source for leaking information" before he retired, too. *Id.* ¶ 250 (55).

### 2. October 2016: Aubrey's arrest on prostitution charges

Additionally, in October 2016, Plaintiffs allege, an undercover DPD officer arranged to receive a massage from Aubrey at a hotel. *Id.* ¶ 224 (51). After the officer met Aubrey in a hotel room and put money on a desk in the room, additional DPD officers entered the room and arrested Aubrey for prostitution. *Id.* ¶¶ 233–34, 236 (52).

Meanwhile, Plaintiffs allege, while Vodicka was at home, Ermatinger and Sayers "entered Plaintiffs' residence, illegally, without a warrant on Vodicka or the residence . . . ." *Id.* ¶¶ 240–42 (53). Specifically, Plaintiffs allege that, around 2:30 pm on the afternoon of Aubrey's arrest, Vodicka sent Aubrey a text message, which stated: "Someone knocking I can't see anybody[.]" *Id.* ¶ 241 (53). After sending this message, Vodicka claims he went back to sleep. *Id.* ¶ 243 (53). "[M]inutes later," however, "he was woken up by [Ermatinger] and [Sayers] in his dimly lit bedroom with [Ermatinger] sitting at the foot of his bed touching [his] leg to wake him up." *Id.* Thereafter, Plaintiffs allege, Ermatinger told Vodicka, "We arrested Steve [Aubrey.]" *Id.* ¶ 244 (54). Plaintiffs believe that Ermatinger and Sayers intended "for Vodicka to think Aubrey was arrested for the murder of Ira Tobolowsky" and wanted "to interrogate Vodicka without the presence of an attorney and without Aubrey in their way." *Id.* ¶¶ 245–46 (54).

### B. Procedural History

Plaintiffs originally filed a complaint in the Southern District of Florida on May 17, 2018. *See* Complaint, *Aubrey v. D Magazine Partners, L.P.*, No. 18-CV-61117 (S.D. Fla. Nov. 8, 2018), ECF No. 1. The district court dismissed the complaint on November 8, 2018, due to a lack of personal

jurisdiction. *See* Omnibus Order, *Aubrey v. D Magazine Partners, L.P.*, No. 18-CV-61117 (S.D. Fla. Nov. 8, 2018), ECF No. 122.[2]

Thereafter, Plaintiffs filed their complaint in this Court on January 8, 2019, bringing claims against Defendants D Magazine Partners, L.P.; Allison Media, Inc.; Jamie L. Thompson; Robert L. Ermatinger, Jr.; Scott Robert Sayers; Judge Eric Vaughn Moyé; City of Dallas; Dallas County; and Does 1-20. *See* Doc. 3, Compl. One day later, Plaintiffs filed an amended complaint. *See* Doc. 4, Notice of Correction. In response to Plaintiffs' amended complaint, all named Defendants filed motions to dismiss. *See* Doc. 21, Mot. to Dismiss; Doc. 29, Mot. to Dismiss; Doc. 31, Mot. to Dismiss; Doc. 32, Mot. to Dismiss. Subsequently, Plaintiffs sought to amend their operative complaint. *See* Doc. 47, Pls.' Mot. for Leave to File Am. Compl. Three days later—before this Court ruled on Plaintiffs' motion—Plaintiffs filed another motion for leave to amend the complaint, which Defendants opposed. *See* Doc. 50, Pls.' Mot. for Leave to File Second Am. Compl., 1–2. The Court granted Plaintiffs' motion, and Plaintiffs then filed their second amended complaint. *See* Doc. 52, Electronic Order; Doc. 54, Pls.' Second Am. Compl.

Subsequently, all Defendants moved to dismiss the claims in the operative complaint. *See* Doc. 63, Mot. to Dismiss; Doc. 65 Mot. to Dismiss; Doc. 67, Mot. to Dismiss; Doc. 71, Mot. to Dismiss; Doc. 72, Mot. to Dismiss; Doc. 73, Mot. to Dismiss. On June 20, 2019, the Court dismissed all claims against Defendant Judge Moyé. *See* Doc. 92, Mem. Op. & Order.

---

[2] Since the date on which Plaintiffs' complaint was dismissed in the Southern District of Florida is relevant to the Court's statute-of-limitations analysis, the Court must clarify this date. The order dismissing Plaintiffs' claims is dated November 8, 2018, but the order was not entered on the Southern District of Florida's electronic filing system until November 9, 2018. *See id.* Because Plaintiffs could not have received notice of the order prior to November 9, 2018, this is the date the Court relies upon in considering Sayers's and Ermatinger's statute-of-limitations arguments.

Thereafter, Plaintiffs sought leave to file a third amended complaint. *See* Doc. 102, Pls.' Mot. for Leave to File Third Am. Compl. The Court granted leave to amend only "insofar as they [sought] to include allegations of six newly-discovered search-warrant affidavits." Doc. 114, Order, 10. Thus, the third amended complaint (Doc. 121) is now the operative complaint in this case.

Sayers and Ermatinger filed their motions to dismiss the third amended complaint (Docs. 128 and 129, respectively) on January 6, 2020. Plaintiffs filed a response to both motions (Doc. 141) on January 27, 2020. Finally, on February 10, 2020, Sayers and Ermatinger filed reply briefs (Docs. 149 and 150, respectively) in support of their motions. Accordingly, the motions are now ripe for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up). And "[a]lthough dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

## III.

## ANALYSIS

Plaintiffs bring a multitude of claims against Sayers and Ermatinger for the Court to examine: (1) a § 1983 claim against Sayers and Ermatinger based on the falsification of search-warrant affidavits; (2) a § 1983 claim against Sayers and Ermatinger based on their warrantless entry into Plaintiffs' home; (3) a § 1983 claim against Ermatinger based on the distribution and misuse of confidential information; (4) a defamation claim against Ermatinger; (5) a defamation-by-implication claim against Ermatinger; (6) a defamation-per-quod claim against Ermatinger; and (7) a civil

conspiracy claim against Ermatinger.[3] *See* Doc. 121, TAC ¶¶ 333–45 (74–77); 346–50 (77–78); 395–407 (90–93); 416–26 (95–98); 427–38 (98–100); 447–54 (102–05); 455–61 (105–06).

Sayers and Ermatinger move to dismiss the three § 1983 claims on two grounds: (1) statute of limitations, and (2) qualified immunity. *See* Doc. 128, Sayers's Mot. to Dismiss, 1, 12; Doc. 129, Ermatinger's Mot. to Dismiss, 1, 16. Further, as to the third § 1983 claim against Ermatinger, he also contends that Plaintiffs have failed to state a claim upon which relief may be granted. *See* Doc. 129, Ermatinger's Mot. to Dismiss, 24. In addition, Ermatinger seeks dismissal of Plaintiffs' state-law claims against him based on: (1) the statute of limitations, and (2) failure to state a claim. *Id.* at 1.

Below, the Court first addresses whether the applicable statute of limitations bars Plaintiffs' § 1983 claims against Sayers and Ermatinger. The Court ultimately declines to conclude, at this stage of the proceedings, that the statute of limitations bars Plaintiffs' § 1983 claims.

Second, the Court analyzes whether Sayers and Ermatinger are entitled to qualified immunity on Plaintiffs' § 1983 claims premised upon Plaintiffs' allegations of the falsified affidavits and the warrantless entry. Because the Court lacks the facts necessary to make such a determination, the Court denies Sayers and Ermatinger's motion to dismiss these claims without prejudice to re-asserting qualified immunity upon the close of limited discovery.

Third, the Court turns to Plaintiffs' § 1983 claim against Ermatinger based on his alleged distribution of confidential information. The Court concludes that Plaintiffs have failed to sufficiently allege this § 1983 claim and thus dismisses the claim with prejudice. Based on this conclusion, the Court declines to address Ermatinger's entitlement to qualified immunity on this claim.

---

[3] Vodicka, rather than both Plaintiffs, brings claims (2) and (6).

Fourth, the Court addresses Plaintiffs' state-law claims against Ermatinger. Because Plaintiffs concede to the dismissal of one of the claims, and the remaining claims are barred by the applicable statute of limitations, the Court dismisses all state-law claims against Ermatinger with prejudice. Moreover, because the Court dismisses these claims based on the statute of limitations, the Court declines to address Ermatinger's alternative arguments—that Plaintiffs have failed to state claims upon which relief may be granted.

A.     *Whether the Applicable Statute of Limitations Bars Plaintiffs' § 1983 Claims[4]*

The Court declines to hold, at the motion-to-dismiss stage of proceedings, that Plaintiffs' § 1983 claims are time-barred by the applicable statute of limitations. Plaintiffs do not dispute that the Texas statute of limitations of two years applies to this case. *See* Doc. 128, Sayers's Mot. to Dismiss, 6; Doc. 141, Pls.' Resp., 5–6.[5] Further, Sayers explains, and Plaintiffs fail to contest, that Plaintiffs' claims against Sayers and Ermatinger accrued in May and October of 2016. *See* Doc. 128, Sayers's Mot. to Dismiss, 6. Because Plaintiffs filed this case on January 8, 2019—over two years and seven months after the date of accrual—Sayers raises a statute-of-limitations affirmative defense, contending that Texas's two-year statute of limitations bars Plaintiffs' § 1983 claims. *Id.* at 6–7.

But Plaintiffs argue that Texas Civil Practice & Remedies Code § 16.064 allows the statute of limitations to toll for sixty days since they filed "these same original claims in the U.S. District

---

[4] Sayers and Ermatinger both raised the statute of limitations as a basis for dismissal. But because Sayers's and Ermatinger's arguments pertaining to the statute of limitations are identical, the Court refers only to Sayers's arguments when resolving this issue.

[5] "The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citation omitted). Texas has a two-year statute of limitations for personal-injury claims. *See* TEX. CIV. PRAC. & REM. CODE § 16.003(a).

Court, Southern District of Florida" within the two-year limitations period. *See* Doc. 141, Pls.'
Resp., 5.

Under § 16.064, the applicable statute of limitations is suspended:

> for the period between the time one action is dismissed and the time the same action
> is re-filed in a different jurisdiction if (1) the original action was dismissed for lack of
> jurisdiction, and (2) the second action was commenced in the proper jurisdiction no
> later than the 60th day following the dismissal.

*Mathers Family Tr. ex rel. Mathers v. Cagle*, 2013 WL 3455489, at *5 (N.D. Tex. July 8, 2013) (citing
TEX. CIV. PRAC. & REM. CODE § 16.064(a)). But the statute of limitations is not tolled under
§ 16.064 "if the adverse party has shown in abatement that the first filing was made with intentional
disregard of proper jurisdiction." TEX. CIV. PRAC. & REM. CODE § 16.064(b).

Here, Plaintiffs re-filed in the Northern District of Texas sixty days after the dismissal in the
Southern District of Florida for lack of personal jurisdiction,[6] thus satisfying both elements of
§ 16.064(a). *See* TEX. CIV. PRAC. & REM. CODE § 16.064(a). Nevertheless, Sayers argues that
Plaintiffs filed in Florida "with intentional disregard of proper jurisdiction." Doc. 128, Sayers's Mot.
to Dismiss, 8 (quotation marks omitted) (quoting TEX. CIV. PRAC. & REM. CODE § 16.064(b)).
Specifically, Sayers contends that Plaintiffs "made a strategic decision to file suit in Florida" and "had
full knowledge that all the Defendants' alleged conduct occurred in Dallas, Texas." *Id.* at 9, 10.

---

[6] The district court dismissed Plaintiffs' claims on November 9, 2018. *See supra* at 4 n.2. Plaintiffs filed
suit in this Court on January 8, 2019. *See* Doc. 1, Compl. Thus, Plaintiffs filed suit on the sixtieth day
following dismissal, and the Court therefore rejects Sayers's suggestion that, irrespective of the tolling,
Plaintiffs' claims were untimely. *See* Doc. 128, Sayers's Mot. to Dismiss, 11. Further, even assuming, for the
sake of argument, that Plaintiffs' claims were dismissed on November 8, 2018, Sayers has not demonstrated
that this is the date upon which the district court's dismissal "[became] final . . . ." TEX. CIV. PRAC. & REM.
CODE § 16.064(a); *see, e.g., Henneberger v. Ticom Geomatics*, 2018 WL 6589472, at *5 (W.D. Tex. Dec. 12,
2018) (concluding a dismissal based on a lack of personal jurisdiction became final when it was affirmed on
appeal).

In response, Plaintiffs explain that they originally filed suit in Florida based upon Defendants' minimum contacts with the forum state. Doc. 141, Pls.' Resp., 6 (citing *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Specifically, Plaintiffs state that because the actions giving rise to Plaintiffs' claims against D Magazine, another Defendant in this case, took place while Plaintiffs resided in Florida, Plaintiffs had a "strong basis" for jurisdiction in Florida over D Magazine. *Id.* at 6–7. And based on this jurisdictional theory, Plaintiffs argue that they brought their claims against "all Defendants in Florida in good faith . . . ." *Id.* at 7.

Nonetheless, Sayers suggests that Plaintiffs' allegations demonstrate an intentional disregard of proper jurisdiction. Doc. 128, Sayers's Mot. to Dismiss, 9. For example, Sayers points out that Plaintiffs asserted, in their initial complaint in the Southern District of Florida, that venue in Texas would be improper due to prejudice that Plaintiffs would suffer if Plaintiffs brought suit there. *Id.* at 9–10.

Though Plaintiffs may have known that their claims hinged on conduct that occurred in Texas, the Court holds that, at the motion-to-dismiss stage, this does not amount to an intentional disregard of proper jurisdiction. The Supreme Court of Texas has clarified that "a mistake of law may be a sufficient excuse" to satisfy a plaintiff's burden of demonstrating that "he did not intentionally disregard proper jurisdiction when filing the case." *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 312–13 (Tex. 2010) (citation omitted).

Further, Section 16.064 "is to be given a liberal construction to effectuate 'its manifest objective—relief from penalty of limitation bar to one who has *mistakenly* brought his action "in the wrong court."'" *Clary Corp. v. Smith*, 949 S.W.2d 452, 461 (Tex. App.—Fort Worth 1997, pet. denied) (emphasis in original) (quoting *Burford v. Sun Oil Co.*, 186 S.W.2d 306, 310 (Tex. Civ.

App.—Austin 1944, writ ref'd w.o.m.)). Following this objective, Texas courts have noted that "a mistake of law may be a sufficient excuse under [§] 16.064 . . . because capable lawyers often make good faith mistakes about the jurisdiction of Texas courts . . . ." *Integrity Glob. Sec., LLC v. Dell Mktg. L.P.*, 2019 WL 2147622, at *9 (Tex. App.—Austin May 17, 2019) (quotation marks omitted) (citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 312). In contrast, § 16.064 "does not protect a plaintiff who misfiles as a part of a 'strategic decision to seek relief' from a court that lacked jurisdiction." *Id.* (citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 313).

In this case, Plaintiffs assert that they mistakenly relied on Florida's long-arm statute to confer personal jurisdiction over all Defendants since one Defendant, D Magazine, harmed them while Plaintiffs lived in Florida. Doc. 141, Pls.' Resp., 7. The Court notes that this could constitute a good-faith mistake of law—rather than a strategic decision. *See Integrity Glob. Sec., LLC*, 2019 WL 2147622, at *9. Because the Court lacks evidence that Plaintiffs filed suit in Florida in intentional disregard of jurisdiction, the Court declines to dismiss Plaintiffs' § 1983 claims against Sayers and Ermatinger based on the statute of limitations at the motion-to-dismiss stage.

B.     *Whether Qualified Immunity Bars Plaintiffs' § 1983 Claims Against Sayers and Ermatinger*

Qualified immunity is "an immunity from suit rather than a mere defense to liability," so it is important to "resolv[e] immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Courts examine each public official's actions independently to determine whether he or she is entitled to qualified immunity. *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007)).

Once a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must negate the qualified immunity defense. *Newman*, 703 F.3d at 761. "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Courts have discretion in deciding which of the two prongs should be addressed first. *Kitchen v. Dallas Cty.*, 759 F.3d 468, 476 (5th Cir. 2014) (citing *Pearson*, 555 U.S. at 236), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015).

While qualified immunity protects defendants asserting the defense from pretrial discovery, there are exceptions to this principle. *See Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). Specifically, "if further factual development is necessary to ascertain the availability of . . . [the qualified immunity] defense," discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claim" may be permitted. *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). But first, the district court must carefully ascertain that the plaintiff has alleged "specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* (quoting *Backe*, 691 F.3d at 648). This inquiry "incorporates the pleading standards established in *Twombly* and *Iqbal*." *Jackson v. Mississippi*, 2012 WL 5185726, at *2 (S.D. Miss. Oct. 18, 2012) (citing *Backe*, 691 F.3d at 648).

Assuming the allegations meet this standard, then and only then, if the court still cannot resolve the qualified immunity defense without further factual development, the court may defer its qualified immunity ruling and order discovery "narrowly tailored to uncover only those facts needed

to rule on the immunity claim." *Zapata*, 750 F.3d at 485 (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987)). And, given what is at stake—overcoming qualified immunity's protection from pretrial discovery—the district court's review process has been described as a "careful procedure." *Id.* (quoting *Backe*, 691 F.3d at 648).

Employing this procedure, the Court analyzes Plaintiffs' two § 1983 claims below.

1.     <u>Section 1983 claim against Sayers and Ermatinger based on falsified search-warrant affidavits</u>

Plaintiffs bring a § 1983 claim against Sayers and Ermatinger, alleging that they violated Plaintiffs' Fourth and Fourteenth Amendment right "to be free from unreasonable searches" by authoring search-warrant affidavits that contained falsified facts. *See* Doc. 121, TAC, ¶¶ 334–39 (74–76).[7]

To support their claim, Plaintiffs set forth numerous statements from search-warrant affidavits purportedly authored by Sayers and Ermatinger that Plaintiffs allege to be false or misleading. *See, e.g., id.* ¶¶ 74–86 (16–19); 123–30 (28–30). Additionally, Plaintiffs allege that Sayers and Ermatinger "failed to include known exculpatory evidence," thus "omitting known material facts" from the affidavits. *Id.* ¶ 334 (74–75). In support, Plaintiffs allege some facts that they believe Ermatinger and Sayers knew, but failed to include, in their search-warrant affidavits. *See, e.g.*, ¶ 71 (15); 119 (27).

---

[7] "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation and quotation marks omitted). The Fourth Amendment protects citizens from unreasonable searches, and, "[w]ith some limited exceptions, it requires police officers to secure a search warrant supported by probable cause . . . ." *United States v. Ortega*, 719 F. App'x 319, 323 (5th Cir. 2018) (per curiam) (citations omitted). Thus, the Court construes Plaintiffs' claim as alleging a violation of the Fourth, rather than the Fourteenth, Amendment.

"Under *Franks v. Delaware*, 438 U.S. 154 (1978), 'a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application.'" *Samadian v. Meade*, 2011 WL 13180181, at *3 (N.D. Tex. Dec. 22, 2011) (quoting *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006))."Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation." *Kohler*, 470 F.3d at 1113.

Additionally, under *Malley v. Briggs*, 475 U.S. 335 (1986), "[a] police officer may be held liable in his individual capacity for filing an application for [a] warrant without probable cause[.]" *Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989); *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017). In contrast with a *Franks* violation, a *Malley* violation "is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton*, 875 F.3d at 264.

Though Plaintiffs make a passing reference to the lack of probable cause underlying Sayers's and Ermatinger's search warrants, see Doc. 121, TAC, ¶ 337 (75), they repeatedly rely upon a *Franks* theory of liability. *See, e.g., id.* ¶¶ 337–38 (75); Doc. 141, Pls.' Resp., 15. Accordingly, the Court analyzes Plaintiffs' § 1983 claim as one premised upon a *Franks* violation.

Under *Franks*, Plaintiffs have sufficiently alleged the violation of a clearly established constitutional right. An official violates a citizen's rights under *Franks* where he:

> swears to false information in an affidavit in support of a search . . . warrant, provided that: (1) the affiant knew the information was false or would have known it was false except for the affiant's reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information.

*Blake v. Lambert*, 921 F.3d 215, 222 (5th Cir. 2019) (citations, quotation marks, and alterations omitted).[8] The first step of the analysis—if satisfied—demonstrates that the official "acted objectively unreasonably." *See Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 980 (5th Cir. 2012).

Sayers contends that though Plaintiffs characterize several of his statements as false, Plaintiffs are "not . . . privy to Sayers's investigation." Doc. 128, Sayers's Mot. to Dismiss, 14. According to Sayers, his affidavits "set [forth] facts and circumstances establishing probable cause . . . ." *Id.* at 15. Likewise, Ermatinger asserts that Plaintiffs' allegations of falsity are conclusory, and that Ermatinger established probable cause through his affidavits. *See* Doc. 129, Ermatinger's Mot. to Dismiss, 18–19.

Here, the Court concludes that Plaintiffs have sufficiently alleged, for purposes of these motions to dismiss, that Sayers and Ermatinger violated a clearly established right and acted in an objectively unreasonable manner. Plaintiffs point to specific statements from the search-warrant affidavits submitted by Sayers and Ermatinger, and Plaintiffs claim these statements are false. *See, e.g.*, Doc. 121, TAC, ¶ 335 (75). Though Sayers and Ermatinger contest whether the statements are false, such as those statements pertaining to the affiant's state of mind, they do not offer evidence demonstrating the veracity of the statements. *See, e.g.*, Doc. 128, Sayers's Mot. to Dismiss, 14; Doc. 129, Ermatinger's Mot. to Dismiss, 18. And Plaintiffs allege that Sayers and Ermatinger made these misrepresentations "knowingly and intentionally, or with reckless disregard for the truth . . . ." Doc.

---

[8] Sayers and Ermatinger recite a third step in the analysis, stating Plaintiffs must show that no reasonably competent officer could have concluded that a warrant should issue. *See* Doc. 128, Sayers's Mot. to Dismiss, 15–16; Doc. 129, Ermatinger's Mot. to Dismiss, 19. But the Fifth Circuit has clarified that this "third step" applies only in "civil suits challenging arrests," not searches. *See Jones v. Perez*, 790 F. App'x 576, 580 n.1 (5th Cir. 2019) (per curiam).

121, TAC, ¶ 337 (75). Further, Plaintiffs allege that, without these misrepresented facts, "probable cause did not otherwise exist." *Id.*

Though these factual assertions may prove inaccurate, they are, if true, sufficient to overcome the defense of qualified immunity at the motion-to-dismiss stage. *See, e.g.*, *Cunningham v. City of Balch Springs*, 2016 WL 235966, at *3 (N.D. Tex. Jan. 20, 2016) (finding that the plaintiff's allegations were sufficient to sustain his § 1983 claim premised on the defendant–officers' roles "in procuring [a] warrant with false information" where the plaintiff alleged that "the evidence will show" that the defendant–officers "knowingly and intentionally, or with reckless disregard for the truth," presented an affidavit to a judge with misleading facts); *Reitz v. City of Abilene*, 2017 WL 3046881, at *17 (N.D. Tex. May 25, 2017) (concluding that, at the motion-to-dismiss stage, the plaintiff alleged sufficient facts to support his *Franks* violation § 1983 claim based on a falsified arrest-warrant affidavit where the plaintiff alleged he committed no crime and the defendants "knew or should have known that fact"), *adopted by* 2017 WL 3034317 (N.D. Tex. July 17, 2017).

Thus, the Court may permit narrow discovery to clarify the facts underlying Plaintiffs' assertions. *Zapata*, 750 F.3d at 485 (citation omitted). Upon the close of discovery limited to qualified immunity, the Court will reassess whether Sayers and Ermatinger are entitled to qualified immunity on Plaintiffs' § 1983 claim alleging a *Franks* violation. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Sayers's and Ermatinger's motions to dismiss this claim.

2.     Section 1983 claim against Sayers and Ermatinger based on warrantless entry into Plaintiffs' home

Next, Vodicka alone brings a § 1983 claim against Sayers and Ermatinger based on their October 2016 entry into Plaintiffs' home on the day of Aubrey's arrest. Doc. 121, TAC, ¶¶ 346–50

(77–78). Vodicka alleges that this entry was "objectively unreasonable because no public official would enter the residence of a private citizen without a warrant [sic] without reason or cause to do so." *Id.* ¶ 347 (78).[9]

Neither Sayers nor Ermatinger devotes much argument to whether Vodicka has alleged a violation of a clearly established right; rather, they contend that their conduct was not objectively unreasonable. *See* Doc. 128, Sayers's Mot. to Dismiss, 18; Doc. 129, Ermatinger's Mot. to Dismiss, 22.[10] Nonetheless, the Court first addresses whether Vodicka has sufficiently alleged a violation of a clearly established right.

Here, Vodicka alleges that, after he heard knocking on his door, he went back to sleep, and he awoke to Sayers and Ermatinger inside his home. Doc. 121, TAC, ¶¶ 241–44 (53–54). Further, he alleges Sayers and Ermatinger had neither a warrant nor consent to enter the residence. *See id.* ¶ 347 (77). In their motions to dismiss, both Sayers and Ermatinger appear to raise the exigent-circumstances exception to the warrant requirement, though they do not set forth any facts supporting its application. *See* Doc. 128, Sayers's Mot. to Dismiss, 17; Doc. 129, Ermatinger's Mot. to Dismiss, 20.

Although a "warrantless search of a person's home is presumptively unreasonable," the "existence of exigent circumstances justifying immediate action" is an "exception to the warrant

---

[9] Though Vodicka asserts that Sayers and Ermatinger violated both his Fourth and Fourteenth Amendment rights, the Court treats his § 1983 claim as one based upon a violation of the Fourth Amendment. *See supra* at 13 n.7.

[10] Sayers and Ermatinger mention that Vodicka alleges only an entry into his residence—not a search. Doc. 128, Sayers's Mot. to Dismiss, 17; Doc. 129, Ermatinger's Mot. to Dismiss, 20. But this is a distinction without a difference, as "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 313 (1972).

requirement . . . ." *Linicomn v. Hill*, 902 F.3d 529, 535–36 (5th Cir. 2018) (citations omitted). For example, "[e]xigent circumstances exist where . . . officers must enter a home to provide emergency assistance to preserve life or prevent serious injury." *Id.* at 536.

Based on the limited facts before the Court, Plaintiffs have sufficiently alleged that Sayers and Ermatinger violated Vodicka's clearly established Fourth Amendment rights. Specifically, the Fifth Circuit has held—prior to 2016—that an individual's failure to respond to knocking at the front door does not constitute an exigent circumstance justifying a warrantless entry. *See id.* at 537 (citing *United States v. Troop*, 514 F.3d 405, 411 (5th Cir. 2008)); *see also United States v. Gomez-Moreno*, 479 F.3d 350, 356 (5th Cir. 2007). Thus, in the absence of additional facts establishing exigent circumstances, the Court concludes that Plaintiffs have sufficiently alleged that Sayers and Ermatinger's entry violated Vodicka's clearly established Fourth Amendment rights.

Next, the Court turns to whether Sayers and Ermatinger's entry was objectively unreasonable. This inquiry is intertwined with the Court's analysis of the violation of a clearly established right, because "[w]hether exigent circumstances exist to justify a warrantless [entry] depends on whether, given the totality of the circumstances, the [entry] was objectively reasonable." *Linicomn*, 902 F.3d at 536 (citation omitted). As mentioned above, Sayers and Ermatinger have not pointed to facts warranting the application of the exigent-circumstances exception. Thus, the Court concludes that Plaintiffs have sufficiently alleged that the entry of Sayers and Ermatinger was objectively unreasonable.

Since the Court lacks a sufficient factual basis for determining whether Sayers and Ermatinger are entitled to qualified immunity for their warrantless entry, the Court opts to permit narrow discovery on the issue of qualified immunity. Upon the close of discovery, the Court will re-examine

whether Sayers and Ermatinger are shielded by qualified immunity. Thus, the Court **DENIES**

**WITHOUT PREJUDICE** Sayers's and Ermatinger's motions to dismiss Vodicka's § 1983 claim.

C.   *Whether Plaintiffs Sufficiently Pled Their § 1983 Claim Against Ermatinger Based on the Distribution of Confidential Information*

Next, Plaintiffs bring a § 1983 claim against Ermatinger, based upon his alleged distribution of information from DPD files "during the course of his employment with DPD and following his termination of employment with DPD . . . ." Doc. 121, TAC, ¶ 400 (91–92). Before Ermatinger retired, Plaintiffs allege, he was "a constant source for leaking information about the active murder investigation . . . ." *Id.* ¶ 250 (55). In their response, Plaintiffs specify that Ermatinger "distributed a non-public photo of Aubrey at the George Allen Courts Building" and "to NBC . . . ." Doc. 141, Pls.' Resp., 18–19.

These actions, Plaintiffs contend, violate their constitutional rights under the "Fourth and Fourteenth Amendments," as well as "General Orders" of DPD and a provision from the Texas Open Records Act. Doc. 121, TAC, ¶¶ 398–403 (91–92) (citing TEX. GOV'T CODE §§ 552.305(a), 552.352 and Dallas Police Dep't Gen. Orders §§ 323.04(B) and 323.05(A)).

As a preliminary matter, Plaintiffs cannot state a § 1983 claim based upon violations of the Texas Open Records Act and DPD General Orders. "[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights." *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (citations omitted). Thus, to the extent Plaintiffs attempt to bring a § 1983 premised upon violations of state or municipal law, the Court concludes that Plaintiffs have failed to state a claim upon which relief may be granted.

Turning to Plaintiffs' allegations of constitutional violations, the only specific constitutional right cited by Plaintiffs is "the fundamental . . . right to privacy." Doc. 121, TAC, ¶¶ 396–97 (90–91). Moreover, Plaintiffs generally assert that their Fourth and Fourteenth Amendment rights were violated. *Id.* ¶ 396 (91). Because "[t]he prohibition against government dissemination of private information . . . is found in the 'Fourteenth Amendment's concept of personal liberty,'" the Court analyzes Plaintiffs' claim under the Fourteenth Amendment. *Zaffuto v. City of Hammond*, 308 F.3d 485, 489 n.4 (5th Cir. 2002) (citation omitted).

The Court holds that Plaintiffs' allegations are wholly insufficient to sustain Plaintiffs' § 1983 claim premised on Ermatinger's distribution of confidential information. "Disclosure of personal matters can violate a person's right to privacy." *Lyle v. Dedeaux*, 1994 WL 612506, at *6 (5th Cir. Oct. 24, 1994) (per curiam) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). "In the context of government disclosure of personal matters, an individual's constitutional right to privacy is violated if: 1) the person had a legitimate expectation of privacy; and 2) that privacy interest outweighs the public need for disclosure." *Mathews v. City of Beaumont*, 2012 WL 12906090, at *3 (E.D. Tex. Mar. 13, 2012) (citing *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996)). Further, "[a]n expectation of privacy with regard to a certain zone of personal information may be legitimate where statutes recognize its confidential character." *Id.* (citing *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 243 (5th Cir. 1994)).

Here, Plaintiffs have not sufficiently alleged any legitimate expectation of privacy in the photo allegedly distributed by Ermatinger. Most notably, in their complaint, Plaintiffs never contend that this photo was personal, nor that Aubrey had a privacy interest in the photo. *See* Doc. 121, TAC, ¶¶ 42 (7), 395–407 (92–93). Rather, in their response, Plaintiffs attempt to re-characterize the photo

as "non-public . . . ." Doc. 141, Pls.' Resp., 19. Moreover, though Plaintiffs allege that Ermatinger violated the Texas Open Records Act by disseminating the photo, see Doc. 121, TAC, ¶ 398 (91), Plaintiffs do not cite to any provision in the Act conferring Aubrey with a legitimate privacy interest in his photo. *See Mathews*, 2012 WL 12906090, at *4 (concluding, after analyzing provisions of the Texas Open Records Act, that "[t]here is no authority that the disclosure of investigative files is legally prohibited or that such files are legally confidential"). Likewise, Plaintiffs' citation to the General Orders of DPD also fails: Plaintiffs have not pointed to any General Order conferring Aubrey with a privacy interest in a photo obtained by DPD. *See* Doc. 121, TAC, ¶ 399 (91). Accordingly, Plaintiffs have insufficiently pled their § 1983 claim based on Ermatinger's alleged distribution of Aubrey's photo.

To support their § 1983 claim, however, Plaintiffs also allege that Ermatinger distributed confidential information *after* retiring from DPD. *See* Doc. 121, TAC, ¶ 400 (91–92). Indeed, Plaintiffs allege that Ermatinger did so "[a]s a private citizen . . . ." *Id.* ¶ 252 (55). But to sustain a § 1983 claim, a plaintiff must allege that the defendant acted "'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (citing 42 U.S.C. § 1983). Though "a private citizen may be held liable under § 1983 where [a] plaintiff alleges 'that the citizen conspired with or acted in concert with state actors,'" *Glotfelty v. Karas*, 512 F. App'x 409, 414 (5th Cir. 2013) (per curiam) (citation omitted), such is not the case here. *See, e.g.*, Doc. 121, TAC, ¶¶ 251–53 (55) (describing only Eramtinger's alleged disclosure of information).Thus, Plaintiffs have failed to state a § 1983 claim against Ermatinger for his post-retirement disclosure of information.

Accordingly, the Court **DISMISSES** Plaintiffs' § 1983 claim premised upon the distribution of confidential information against Ermatinger **WITH PREJUDICE**.

D.    *Whether the Statute of Limitations Bars the Remaining Claims Against Ermatinger*

Finally, Plaintiffs bring several claims against Ermatinger under Florida and Texas state law: defamation under Florida law; defamation by implication under Florida law; defamation per quod under Texas law; and civil conspiracy for invasion of privacy under Texas law. *See* Doc. 121, TAC, ¶¶ 416–26 (95–98); 427–38 (98–100); 447–54 (102–05); 455–61 (105–06). Plaintiffs have since conceded that the "Texas state law claims for defamation" should be dismissed. *See* Doc. 141, Pls.' Resp., 4, 9.[11] Accordingly, the Court **DISMISSES** Vodicka's defamation-per-quod claim **WITH PREJUDICE**.

As to the remaining state law claims, Ermatinger asserts that all are barred under the applicable statute of limitations. Doc. 129, Ermatinger's Mot. to Dismiss, 12–13. In their response, Plaintiffs contend that "the Florida claims for defamation should survive under Florida state law as they would have if only [the district court in the Southern District of Florida] had transferred the case from the Southern District of Florida to the Northern District of Texas . . . ." Doc. 141, Pls.' Resp., 9–10. Plaintiffs explain that had this transfer happened, the state law of the transferor court—here, Florida law—would govern. *Id.* at 10.[12]

As an initial matter, the Court rejects Plaintiffs' transfer argument. The Fifth Circuit has held that "following a section 1404(a) transfer from a district in which personal jurisdiction over the

---

[11] The Court is uncertain whether Plaintiffs intend to concede their civil conspiracy claim under Texas law. In an abundance of caution, the Court addresses the claim below.

[12] Plaintiffs also appear to claim that Vodicka is disabled because he receives disability income pursuant to the Ryan White Care Act, and that this warrants tolling of the statute of limitations under Texas Civil Practice and Remedies Code § 16.001. *See* Doc. 121, TAC, ¶ 23 (3); see *also id.* ¶ 448 (102). This does not amount to disability under § 16.001 (defining "legal disability" as being under eighteen-years-old or of "unsound mind").

defendant could not be obtained, the transferee court must apply the choice of law rules of the state in which it sits . . . ." *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1110 (5th Cir. 1981). Given that the district court in the Southern District of Florida found that it lacked personal jurisdiction over the Defendants in this case, even if the court had elected to transfer the action, this Court—as the transferee court—would still be bound by Texas choice-of-law rules.

Now, the Court turns to the applicable statute of limitations for Plaintiffs' remaining claims: defamation under Florida law; defamation by implication under Florida law; and civil conspiracy for invasion of privacy under Texas law.

Generally, "a federal court applies the choice-of-law rules of the state in which it sits." *United States ex rel. Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998). Further, "[t]he Fifth Circuit has held that Texas applies its own statute of limitations, regardless [of] what substantive law applies." *Woolley v. Clifford Chance Rogers & Wells, L.L.P.*, 2004 WL 57215, at *3 (N.D. Tex. Jan. 5, 2004) (citations omitted).[13] For defamation claims, Texas has a one-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE § 16.002(a). This "one-year limitation likewise applies to other causes of action for which the gravamen of the complaint is injury to a plaintiff's reputation because of allegedly defamatory statements." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741–42 (5th Cir. 2019) (citations omitted). Further, these defamation-related claims accrue, for statute-of-limitations purposes, on the "first date of publication," irrespective of whether the alleged defamatory statement is in print or on the Internet. *See id.* at 742 (citations omitted).

---

[13] Because of this principle, the Court need not decide whether Florida or Texas substantive law governs Plaintiffs' claims.

Here, Plaintiffs' three claims—defamation, defamation by implication, and civil conspiracy—are premised upon Ermatinger's comments to D Magazine, which, Plaintiffs allege, published allegedly defamatory statements on April 26, 2017; May 3, 2017; May 8, 2017; and May 9, 2017. *See* Doc. 121, TAC, ¶¶ 416–26 (95–98) (defamation claim); 427–38 (98–100) (defamation by implication claim); 455–61 (106) (civil conspiracy claim); 259 (57) (alleged dates of publication); 348 (65) (alleged dates of publication). Two of Plaintiffs' claims sound in defamation, and "the gravamen of [Plaintiffs' third claim, civil conspiracy,] is injury to [Plaintiffs'] reputation because of allegedly defamatory statements." *See Walker*, 938 F.3d at 741–42; Doc. 121, TAC, ¶¶ 455–61 (106). Thus, all three claims are subject to Texas's one-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.002(a); *Walker*, 938 F.3d at 741–42.

Even assuming, for the sake of argument, that Ermatinger was implicated in all of the alleged defamatory publications, the latest date of publication alleged is May 9, 2017. But Plaintiffs did not bring these claims until May 17, 2018. Doc. 121, TAC, ¶ 20 (3). Accordingly, Plaintiffs' defamation, defamation by implication, and civil conspiracy claims are time-barred, and the Court **DISMISSES** these claims against Ermatinger **WITH PREJUDICE**.

## IV.

## CONCLUSION

For the foregoing reasons, the Court declines to dismiss Plaintiffs' § 1983 claims based upon the statute of limitations. Thus, to the extent Sayers and Ermatinger urge the Court to do so, the Court **DENIES** their motions (Docs. 128 and 129, respectively).

Moreover, the Court **DENIES** Sayers's motion to dismiss Plaintiffs' claims based upon qualified immunity (Doc. 128) **WITHOUT PREJUDICE** to Sayers re-asserting qualified immunity

following limited discovery. Similarly, the Court **DENIES** Ermatinger's motion to dismiss (Doc. 129) to the extent he asserts qualified immunity on Plaintiffs' § 1983 claims premised on the falsification of search-warrant affidavits and the warrantless entry. He, too, may re-assert qualified immunity on these claims upon the close of the discovery period.

Further, the Court **ORDERS** the parties to conduct discovery narrowly tailored to the issue of Sayers's and Ermatinger's entitlement to qualified immunity on Plaintiffs' two remaining claims. Specifically, the Court **ORDERS** discovery limited to the issues of:

1.  Whether the statements alleged by Plaintiffs to be false in the search-warrant affidavits authored by Sayers and Ermatinger are, indeed, false;

2.  If so, whether Sayers and Ermatinger included these false statements in their affidavits with reckless disregard for the truth;

3.  Whether, absent any demonstrably false statements from the search-warrant affidavits, Sayers's and Ermatinger's search-warrant affidavits support a finding of probable cause;

4.  Whether there are facts supporting the application of the exigent-circumstances exception, or any other exception to the warrant requirement, to Sayers's and Ermatinger's October 2016 entry into Plaintiffs' residence.

All such discovery must be completed on or before **May 20, 2020.** Any summary-judgment motion based on qualified immunity shall be filed on or before **June 17, 2020.**

Finally, to the extent Ermatinger seeks dismissal of Plaintiffs' § 1983 claim based upon the distribution of confidential information, as well as Plaintiffs' state law claims against Ermatinger, the Court **GRANTS** Ermatinger's motion (Doc. 129) and **DISMISSES** these claims **WITH PREJUDICE**.

SO ORDERED.

SIGNED: March 26, 2020.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE