# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN B. AUBREY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0056-B |
| | § | |
| D MAGAZINE PARTNERS, L.P., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dallas County's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 125), seeking dismissal of Plaintiffs' claim based on the statute of limitations and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion (Doc. 125). Though the Court declines to dismiss the claim on statute-of-limitations grounds, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claim based on Plaintiffs' failure to state a claim under Rule 12(b)(6). Further, the Court **DENIES** Plaintiffs' request to amend their complaint.

# I.

## BACKGROUND[1]

A.  *Factual History*

Plaintiffs, Steven B. Aubrey (Aubrey) and Brian E. Vodicka (Vodicka), are a married couple that lived in Dallas, Texas, when the following events occurred. Doc. 121, Third Am. Compl. (TAC), ¶¶ 27 (5), 38 (6). On May 13, 2016, Ira Tobolowsky died in a suspicious early morning fire at his home. *Id.* ¶ 28 (5). Thereafter, Detectives Robert L. Ermatinger, Jr. and Scott Robert Sayers allegedly obtained search warrants to investigate Plaintiffs in relation to the murder. *See id.* ¶¶ 43–44 (7). As part of this investigation, Plaintiffs allege that representatives of the City of Dallas and Dallas County executed search warrants that permitted them "only to examine, photograph, and fingerprint Plaintiffs." *See id.* ¶¶ 105 (23), 184 (42). Yet, Plaintiffs allege, these representatives instead "decided to assault Plaintiffs with deadly force and risk Plaintiffs' lives without cause." *Id.* ¶ 188 (43). Specifically, Plaintiffs allege that the City and County employees "ambushed" Plaintiffs as they attempted to back out of their driveway by blocking Plaintiffs' vehicle, drawing firearms, and pointing them at Plaintiffs. *Id.* ¶ 190 (43–44). Subsequently, Plaintiffs explain, Aubrey had a gun pointed at his head, while Vodicka was pinned to the ground. *Id.* (44).

Plaintiffs allege that the arresting individuals did not have the authority to arrest Plaintiffs, because the warrant was only for the "examination, photographing and fingerprinting [of] Plaintiffs." *Id.* ¶ 193 (44). Furthermore, Plaintiffs allege that the Dallas Police Department (DPD) and Dallas

---

[1] Only pertinent facts for this Motion to Dismiss have been included for the sake of brevity. The third amended complaint consists of 487 paragraphs spanning 110 pages. Because the third amended complaint consists of inconsistent paragraph numbering, the Court cites the paragraph to which it refers, followed by the page number in parentheses, throughout this order.

County have policies "concerning the use of deadly force [to] examine, photograph and fingerprint," which "allows deputies to violate citizens' constitutional rights under the Fourth Amendment . . . ." *Id.* ¶¶ 362 (81), 363 (82). Moreover, Plaintiffs assert that the failure of DPD, as well as Dallas County,[2] to properly train their employees was the proximate cause of Plaintiffs' injuries. *Id.* ¶ 195 (46). The actions by DPD and Dallas County, Plaintiffs contend, led to an unlawful arrest that violated their "constitutional rights to be free from unreasonable search and seizures, cruel and unusual punishment." *Id.* ¶ 203 (47).

B.     *Procedural History*

Plaintiffs originally filed a complaint in the Southern District of Florida on May 17, 2018. *See* Complaint, *Aubrey v. D Magazine Partners, L.P.*, No. 18-CV-61117 (S.D. Fla. Nov. 8, 2018), ECF No. 1. The district court dismissed the complaint due to a lack of personal jurisdiction on November 8, 2018. *See* Omnibus Order, *Aubrey v. D Magazine Partners, L.P.*, No. 18-CV-61117 (S.D. Fla. Nov. 8, 2018), ECF No. 122.[3]

Thereafter, Plaintiffs filed their complaint in this Court on January 8, 2019, bringing claims against Defendants D Magazine Partners, L.P.; Allison Media, Inc.; Jamie L. Thompson; Robert L. Ermatinger, Jr.; Scott Robert Sayers; Judge Eric Vaughn Moyé; City of Dallas; Dallas County; and

---

[2] Plaintiffs often refer to "Sheriff Valdez," rather than Dallas County, because Plaintiffs allege that Sheriff Valdez is the final policymaker for Dallas County. *See id.* ¶ 199 (47). For the sake of clarity, the Court simply refers to Sheriff Valdez as "Dallas County."

[3] Since the date on which Plaintiffs' complaint was dismissed in the Southern District of Florida is relevant to the Court's statute-of-limitations analysis, the Court must clarify this date. The order dismissing Plaintiffs' claims is dated November 8, 2018, but the order was not entered on the Southern District of Florida's electronic filing system until November 9, 2018. *See id.* Because Plaintiffs could not have received notice of the order prior to November 9, 2018, this is the date the Court relies upon in considering Dallas County's statute-of-limitations argument.

Does 1-20.[4] *See* Doc. 3, Compl. One day later, Plaintiffs filed an amended complaint. *See* Doc. 4, Notice of Correction. In response to Plaintiffs' amended complaint, all named Defendants filed motions to dismiss. *See* Doc. 21, Mot. to Dismiss; Doc. 29, Mot. to Dismiss; Doc. 31, Mot. to Dismiss; Doc. 32, Mot. to Dismiss. Subsequently, Plaintiffs sought to amend their operative complaint. *See* Doc. 47, Pls.' Mot. for Leave to File Am. Compl. Three days later—before this Court ruled on Plaintiffs' motion—Plaintiffs filed another motion for leave to amend the complaint, which Defendants opposed. *See* Doc. 50, Pls.' Mot. for Leave to File Second Am. Compl., 1–2. The Court granted Plaintiffs' motion, and Plaintiffs then filed their second amended complaint. *See* Doc. 52, Electronic Order; Doc. 54, Pls.' Second Am. Compl.

Subsequently, all Defendants moved to dismiss the claims in the operative complaint. *See* Doc. 63, Mot. to Dismiss; Doc. 65 Mot. to Dismiss; Doc. 67, Mot. to Dismiss; Doc. 71, Mot. to Dismiss; Doc. 72, Mot. to Dismiss; Doc. 73, Mot. to Dismiss. On June 20, 2019, the Court dismissed all claims against Defendant Judge Moyé. *See* Doc. 92, Mem. Op. & Order.

Thereafter, Plaintiffs sought leave to file a third amended complaint. *See* Doc. 102, Pls.' Mot. for Leave to File Third Am. Compl. The Court granted leave to amend only "insofar as they [sought] to include allegations of six newly-discovered search-warrant affidavits." Doc. 114, Order, 10. Thus, the third amended complaint (Doc. 121) is now the operative complaint in this case.

Dallas County filed its motion to dismiss on December 31, 2019. *See* Doc. 125, Mot. to Dismiss. Plaintiffs filed a response to this motion on January 21, 2020. *See* Doc. 133, Pls.' Resp.

---

[4] The Court hereinafter refers to Defendants City of Dallas, Robert L. Ermatinger, Jr., and Scott Robert Sayers collectively as "the City Defendants." Further, the Court refers to Defendants D Magazine Partners, L.P., Allison Media, Inc., and Jamie L. Thompson collectively as "the Media Defendants."

Finally, on January 31, 2020, Dallas County submitted its reply brief in support of the motion. *See* Doc. 142, Def.'s Reply. Accordingly, the motion is now ripe for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up). And "[a]lthough dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

## III.

## ANALYSIS

Plaintiffs bring one claim against Dallas County: a 42 U.S.C. § 1983 claim based on the use of deadly force. *See* Doc. 121, TAC, ¶¶ 361–63 (81–82). Dallas County moves to dismiss the claim based on two grounds: (1) statute of limitations, and (2) failure to state a claim. *See* Doc. 125, Mot. to Dismiss, 6, 14. The Court addresses each ground below, ultimately dismissing Plaintiffs' claim against Dallas County based on Plaintiffs' failure to state a claim upon which relief may be granted. Thereafter, the Court turns to Plaintiffs' request for leave to amend their complaint, which the Court denies in light of the history of this case.

A.     *Whether the Applicable Statute of Limitations Bars Plaintiffs' Claim*

The Court declines to hold, at the motion-to-dismiss stage of proceedings, that Plaintiffs' claims are time-barred by the applicable statute of limitations. Plaintiffs do not dispute that the Texas statute of limitations of two years applies to this case. *See* Doc. 125, Mot. to Dismiss, 6–8; Doc. 133, Pls.' Resp., 6.[5] Further, Dallas County explains, and Plaintiffs fail to contest, that the accrual date

---

[5] "The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citation omitted). Texas has a two-year statute of limitations for personal-injury claims. *See* TEX. CIV. PRAC. & REM. CODE § 16.003.

of Plaintiffs' cause of action is May 19, 2016. *See* Doc. 125, Mot. to Dismiss, 6; Doc. 133, Pls.' Resp., 6. Because Plaintiffs filed this case on January 8, 2019—over two years and seven months after the date of accrual—Dallas County raises a statute-of-limitations affirmative defense under Federal Rule of Civil Procedure 8(c)(1), contending that the two-year statute of limitations bars Plaintiffs' claim. Doc. 125, Mot. to Dismiss, 8.

But Plaintiffs argue that Texas Civil Practice & Remedies Code § 16.064 allows the statute of limitations to toll for sixty days since they filed the "same original claim in the U.S. District Court, Southern District of Florida" within the two-year limitations period. *See* Doc. 133, Pls.' Resp., 6.

Under § 16.064, the applicable statute of limitations is suspended:

> for the period between the time one action is dismissed and the time the same action is re-filed in a different jurisdiction if (1) the original action was dismissed for lack of jurisdiction, and (2) the second action was commenced in the proper jurisdiction no later than the 60th day following the dismissal.

*Mathers Family Tr. ex rel. Mathers v. Cagle*, 2013 WL 3455489, at *5 (N.D. Tex. July 8, 2013) (citing TEX. CIV. PRAC. & REM. CODE § 16.064(a)). But the statute of limitations is not suspended under § 16.064 "if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction." TEX. CIV. PRAC. & REM. CODE § 16.064(b).

Here, Plaintiffs re-filed in the Northern District of Texas sixty days after the dismissal in the Southern District of Florida for lack of personal jurisdiction,[6] thus satisfying both elements of § 16.064(a). *See* TEX. CIV. PRAC. & REM. CODE § 16.064(a). Nevertheless, Dallas County argues that Plaintiffs filed in Florida with "intentional disregard of proper jurisdiction." Doc. 125, Mot. to

---

[6] The district court dismissed Plaintiffs' claims on November 9, 2018. *See supra* at 3 n.3. Plaintiffs filed suit in this Court on January 8, 2019. *See* Doc. 1, Compl. Thus, Plaintiffs filed suit on the sixtieth day following dismissal.

Dismiss, 10–11 (citing TEX. CIV. PRAC. & REM. CODE § 16.064(b)). Specifically, Dallas County contends that Plaintiffs "made a strategic decision to file suit in the wrong jurisdiction" and "had full knowledge that all of Defendants' actions alleged occurred in Dallas, Texas." *Id.* at 11.

In response, Plaintiffs explain that they originally filed suit in Florida based upon one defendant's alleged minimum contacts with the forum state. Doc. 133, Pls.' Resp., 6 (citing *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Specifically, Plaintiffs state that because the actions giving rise to Plaintiffs' claims against D Magazine, another Defendant in this case, took place while Plaintiffs resided in Florida, Plaintiffs had a "solid basis" for jurisdiction in Florida over D Magazine. *Id.* at 8. And based on this jurisdictional theory, Plaintiffs brought their claims against "all Defendants in Florida in good faith . . . ." *Id.*

Nonetheless, Dallas County suggests that "a mistake of law would not allow Plaintiffs the benefit of the tolling provision . . . because all persons are presumed to know the law . . . ." Doc. 125, Mot. to Dismiss, 11. In support of this assertion, Dallas County points to two Texas cases. *Id.* at 10–11 (citing *Parker v. Cumming*, 216 S.W.3d 905 (Tex. App.—Eastland 2007, pet. denied) and *French v. Gill*, 252 S.W.3d 748 (Tex. App.—Texarkana 2008, pet. denied)).

The Court rejects Dallas County's proposition that a mistake of law precludes the application of the tolling provision. In doing so, the Court first turns to the law governing this dispute. Second, the Court distinguishes the cases upon which Dallas County relies.

The Supreme Court of Texas has clarified that "a mistake of law may be a sufficient excuse" to satisfy a plaintiff's burden of demonstrating that "he did not intentionally disregard proper jurisdiction when filing the case." *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 312–13 (Tex. 2010) (citation omitted).

Further, Section 16.064 "is to be given a liberal construction to effectuate 'its manifest objective—relief from penalty of limitation bar to one who has *mistakenly* brought his action "in the wrong court.""" *Clary Corp. v. Smith*, 949 S.W.2d 452, 461 (Tex. App.—Fort Worth 1997, pet. denied) (emphasis in original) (quoting *Burford v. Sun Oil Co.*, 186 S.W.2d 306, 310 (Tex. Civ. App.—Austin 1944, writ ref'd w.o.m.)). Following this objective, Texas courts have noted that "a mistake of law may be a sufficient excuse under [§] 16.064 . . . because capable lawyers often make good faith mistakes about the jurisdiction of Texas courts . . . ." *Integrity Glob. Sec., LLC v. Dell Mktg. L.P.*, 2019 WL 2147622, at *9 (Tex. Civ. App.—Austin May 17, 2019) (quotation marks omitted) (citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 312 (Tex. 2010)). In contrast, § 16.064 "does not protect a plaintiff who misfiles as a part of a 'strategic decision to seek relief' from a court that lacked jurisdiction." *Id.* (citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 313).

In this case, Plaintiffs assert that they mistakenly relied on Florida's long-arm statute to confer personal jurisdiction over all Defendants since one Defendant, D Magazine, harmed them while Plaintiffs lived in Florida. Doc.133, Pls.' Resp., 8. The Court notes that this could constitute a good-faith mistake of law—rather than a strategic decision. *See Integrity Glob. Sec., LLC*, 2019 WL 2147622, at *9.

Moreover, the Court finds the cases upon which Dallas County relies to be distinguishable from the case at hand. In the first case, *Parker v. Cumming*, the plaintiff filed a personal-injury lawsuit as an adversary proceeding in her federal bankruptcy case. 216 S.W.3d at 908. When her claims were later dismissed, she sought to invoke the tolling provision of § 16.064 in state court. *Id.* But the trial court found that she intentionally disregarded proper jurisdiction when she filed her adversary proceeding in her bankruptcy case. *See id.* Thus, she could not invoke the tolling provision of

§ 16.064, and the trial court granted summary judgment in favor of the defendants on statute-of-limitations grounds. *See id.*

On appeal, the Eastland Court of Appeals in *Parker* affirmed. *Id.* at 912–13. The *Parker* court reasoned that "even assuming every statement and allegation in [the plaintiff's] complaint is taken as true, that pleading affirmatively establishes that the bankruptcy court did not have jurisdiction." *Id.* at 910. "[T]he very bankruptcy statute [the plaintiff] cited," the court noted, "makes clear that the bankruptcy court had no jurisdiction to hear [the plaintiff's] personal injury suit." *Id.* Further, the court noted that "whether [the plaintiff] was conscious of this is immaterial" because "[a]ll persons are presumed to know the law and are charged with knowledge of statutory provisions." *Id.* at 911 (citing *Virtual Healthcare Servs., Ltd. v. Laborde*, 193 S.W.3d 636, 644 (Tex. App.—Eastland 2006)).

Here, however, Plaintiffs' actions are distinguishable from those of the plaintiff in *Parker*. In *Parker*, the plaintiff filed a personal-injury suit in a bankruptcy court, *id.*—a court with jurisdiction over matters far different than that of a federal district court. *Compare* 28 U.S.C. § 157(b) (federal bankruptcy court jurisdiction) *with* 28 U.S.C. § 1331; 28 U.S.C. § 1332; 28 U.S.C. § 1367 (federal district court jurisdiction). In contrast, here, Plaintiffs filed suit in the wrong federal district, but they still filed in a federal district court, which has subject-matter jurisdiction over the types of claim alleged. *See* 28 U.S.C. § 1331 (conferring original jurisdiction over claims arising under federal law); 28 U.S.C. § 1332 (conferring original jurisdiction over certain claims made by citizens of one state against citizens of another state); 28 U.S.C. § 1367 (conferring supplemental jurisdiction over claims related to those over which the district court has original jurisdiction). Additionally, the court in

*Parker* ruled on a motion for summary judgment—not a motion to dismiss. *See Parker*, 216 S.W.3d at 908.[7]

Likewise, the second case upon which Dallas County relies, *French v. Gill*, is distinguishable from the case at hand. *See* 252 S.W.3d at 748. In *French*, the plaintiffs amended their complaint in federal district court to add parties that defeated diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at 751–52. The amended complaint stated: "There will no longer be diversity of citizenship between the parties to this [federal] civil action . . . ." *Id.* at 751 (alteration in original). After the federal district court did not permit this amendment, the plaintiffs filed suit in state court, relying upon the tolling provision of § 16.064 to sustain their claim. *See id.* at 750.

But the Texarkana Court of Appeals, reviewing the plaintiffs' claim in *French*, rejected this argument and affirmed the trial court's granting of summary judgment in favor of the defendants. *See id.* at 757. The court concluded that the plaintiffs' amended complaint, "[o]n its face," demonstrated an intentional disregard of proper jurisdiction. *Id.* at 755. Regardless of whether the plaintiffs' counsel *intended* to defeat jurisdiction, the court reasoned, "[t]he only evidence on point"—the amended complaint's "unequivocal and clear statement that adding the new players would defeat jurisdiction"—amounted to an "intentional disregard of proper jurisdiction." *Id.* at 755, 757.

Unlike the plaintiffs in *French*, however, Plaintiffs here have not made any "unequivocal and clear statement" indicating that jurisdiction was improper in Florida. *See id.* at 755. Rather, Plaintiffs' original complaint in the Southern District of Florida premised personal jurisdiction upon the

---

[7] The difference in procedural posture is significant: "Whereas a motion to dismiss challenges a complaint's legal sufficiency, a post-discovery motion for summary judgment evaluates whether a genuine issue of material fact remains after considering both sides' proffered evidence." *Rader v. Cowart*, 543 F. App'x 358, 361 (5th Cir. 2013) (per curiam).

contacts of one defendant with the state of Florida. *See* Doc. 133, Pls.' Resp., 8. Though this reliance was misplaced, this Court cannot conclude it amounted to intentional disregard like that of the plaintiffs in *French*. Accordingly, the Court finds neither case offered by Dallas County to be analogous to the case before the Court.

Because the Court lacks clear evidence that Plaintiffs filed suit in Florida in intentional disregard of jurisdiction, the Court declines to dismiss Plaintiffs' claim against Dallas County based on the statute of limitations at the motion-to-dismiss stage. *Cf. Parker*, 216 S.W.3d 905; *French*, 252 S.W.3d 748.

B.    *Whether Plaintiffs Sufficiently Pled Their § 1983* Monell *Claim*

The Court holds that Plaintiffs have not sufficiently pled their § 1983 *Monell* claim against Dallas County. Plaintiffs allege that Dallas County, along with the City of Dallas and John Doe defendants, violated Plaintiffs' Fourth Amendment rights by using excessive force in violation of 42 U.S.C. § 1983. Doc. 121, TAC, ¶¶ 361–81 (81–88) (Count IV). Dallas County,[8] however, argues that Plaintiffs failed to plead enough facts to sustain their claim. Doc. 125, Mot. to Dismiss, 14.

This Court agrees. Section 1983 provides a federal cause of action against "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "To state a claim under [§] 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2)

_____

[8] Dallas County does not clearly include other Defendants in its motion to dismiss. *See* Doc. 125, Mot. to Dismiss, 1. Consequently, the Court considers the Motion under the assumption that it pertains only to Dallas County as a municipality.

-12-

demonstrate that the alleged deprivation was committed by a person or entity acting under color of state law." *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 874 (N.D. Tex. 2018) (citations omitted).

But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, municipal liability under § 1983 "results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski*, 237 F.3d at 579. This theory of liability is commonly referred to as a "*Monell* claim." *See, e.g., Ramirez v. Abreo*, 2010 WL 11565455, at *1 (N.D. Tex. May 27, 2010).

To establish a *Monell* claim, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted). "The ultimate question" in assessing a motion to dismiss a *Monell* claim is "whether [the plaintiff] has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy that resulted in injury to [the plaintiff.]" *Mohamed for A.M.*, 300 F. Supp. 3d at 875.[9]

For purposes of municipal liability under Section 1983, "[o]fficial policy usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Davenport v. City of Garland*, 2010 WL 1779620, at *2 (N.D. Tex.

---

[9] Here, Plaintiffs identify the Dallas County Commissioners Court and the Dallas County Sheriff as alleged policymakers. *See* Doc. 121, TAC, ¶ 363 (82). The Court will hereinafter refer to Dallas County's alleged policymakers as simply "Dallas County."

Apr. 9, 2010), *adopted by* 2010 WL 1779619, at *1 (N.D. Tex. Apr. 30, 2010) (quoting *Piotrowski*, 237 F.3d at 579; *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Additionally, the "official policy" supporting a § 1983 claim may be either an "unconstitutional official policy" or "a facially innocuous policy. . . ." *Piotrowski*, 237 F.3d at 579. The latter, however, only "support[s] liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* (citation omitted).

Due to these nuances, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional." *Id.* at 579–80.

Here, Plaintiffs allege that four different policies contributed to the alleged violation of their Fourth Amendment rights: (1) use of deadly force to examine, photograph, and fingerprint; (2) failure to "knock and announce"; (3) inadequate training; and (4) inadequate discipline and supervision. *See* Doc. 121, TAC, ¶¶ 363–65 (82–83), 379 (87). The Court will consider policies (1) and (2) together, followed by policies (3) and (4) together. Because Plaintiffs have not sufficiently alleged a policy or custom to support their § 1983 claim, the Court dismisses this claim.

1.     Use of deadly force and failure to knock and announce

Plaintiffs allege that Dallas County has a policy "concerning the use of deadly force [to] examine, photograph and fingerprint," which "allows deputies to violate citizens' constitutional rights . . . ." *Id.* ¶ 363 (82). Moreover, Plaintiffs also contend that employees of Dallas County "disregard[ed] . . . Plaintiffs' right to knock-and-announce . . . ." *Id.* ¶ 188 (43). Dallas County, on the other hand, suggests that Plaintiffs have not sufficiently pled that a "Dallas County policymaker promulgated or ratified an unconstitutional policy." Doc. 125, Mot. to Dismiss, 15.

As a preliminary matter, the Court must first determine which definition of "official policy" Plaintiffs rely upon. *See Davenport*, 2010 WL 1779620, at *2. In describing Dallas County's policies, Plaintiffs allege that Dallas County has similar policies to those of DPD and cites to DPD policies as the official policies of Dallas County. Doc. 121, TAC, ¶¶ 171–80 (40–42). But Plaintiffs do not argue that these officially adopted and promulgated policies created the alleged constitutional violation. Instead, Plaintiffs argue that the force used to examine, photograph, and fingerprint them was excessive, and the circumstances did not warrant the use of force authorized by the written policies. *Compare id.* ¶¶ 177–80 (41–42) (identifying policies stating that deadly force and drawing a firearm require a degree of threat) *with* ¶¶ 191–92 (44) (alleging that Plaintiffs did not pose the requisite threat to justify deadly force and the drawing of weapons). And Plaintiffs do not suggest that Dallas County's alleged failure to "knock and announce" its presence resulted from any official policy. Thus, Plaintiffs' claim against Dallas County rests upon the second definition of official policy: a widespread practice or custom.

To establish a custom, Plaintiffs must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowoski*, 237 F.3d at 582 (citation omitted). Prior incidents used to establish a pattern "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipality] employees." *Webster*, 735 F.2d at 842. Further, the prior incidents alleged "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)

(emphasis in original) (citations omitted); *see also Peterson*, 588 F.3d at 851 (5th Cir. 2009) ("A pattern requires similarity and specificity[.]").

Further, "[i]t is generally accepted that a single incident does not show a policy or custom, nor is a single incident sufficient to infer a policy based on customary practice." *Moreno v. City of Dallas*, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015) (citation omitted).

In their complaint, Plaintiffs cite to seven separate incidents of excessive force allegedly committed by DPD, but they fail to cite to any incidents that involved Dallas County—except for that alleged in Plaintiffs' case. *See* Doc. 121, TAC, ¶¶ 189 (43), 194 (44–46). Accordingly, even examining the pleadings in a light most favorable to Plaintiffs, the Court holds that Plaintiffs insufficiently pled Dallas County's alleged custom of using deadly force when examining, photographing, and fingerprinting suspects.

Likewise, with respect to Dallas County's alleged custom of failing to knock and announce, see Doc. 121, TAC, ¶ 365 (82), Plaintiffs do not allege any other instances—aside from their encounter with Dallas County employees—of such a failure. Thus, the Court cannot infer that Dallas County has a custom of "ignor[ing] the constitutional knock-and-announce requirement," see Doc. 133, Pls.' Resp., 15, and the Court holds that Plaintiffs insufficiently pled the existence of such a custom.[10]

---

[10] Because Plaintiffs have not sufficiently alleged an official policy or custom of (1) deadly force or (2) failing to knock and announce, the Court need not consider the remaining elements of Plaintiffs' *Monell* claim based on these theories.

In sum, Plaintiffs have not sufficiently alleged that Dallas County has an "official policy or custom" of either: (1) using deadly force to examine and fingerprint, or (2) failing to knock and announce. *See Piotrowski*, 237 F.3d at 579.

The Court acknowledges that a single incident of unconstitutional activity may be sufficient to impose *Monell* liability where "the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998) (citation omitted). But Plaintiffs do not allege that an official policymaker was involved in Dallas County's alleged violations of Plaintiffs' rights. *See* Doc. 121, TAC, ¶ 188 (43). Rather, Plaintiffs repeatedly assert that Dallas County employees utilized excessive force against Plaintiffs. *See, e.g.*, Doc. 133, Pls.' Resp, 13–14; Doc. 121, TAC, ¶ 188 (43). To the extent Plaintiffs also allege that the Dallas County Sheriff, an alleged final policymaker, "reached an agreement" to conduct the stakeout of Plaintiffs' home, see Doc. 121, TAC, ¶ 187 (43), this allegation is conclusory and lacks any factual substantiation. *See Pinedo v. City of Dallas*, 2015 WL 221085, at *6 (N.D. Tex. Jan. 15, 2015) (requiring the plaintiff's allegations of a policy or custom to "contain specific facts") (citations omitted). Thus, Plaintiffs' attempt to invoke the single-incident exception fails. *See* Doc. 133, Pls.' Resp., 14.

Accordingly, the Court proceeds to examine Plaintiffs' next theory of *Monell* liability: failure to train.

2.    Failure to train[11]

Plaintiffs also allege in their *Monell* claim that Dallas County failed to train its officers on the use of: (1) detention and seizure procedures; (2) excessive and deadly force; (3) de-escalation tactics and "less deadly means"; and (4) cover and pursuit of a suspect. Doc. 121, TAC, ¶ 368 (83). Plaintiffs suggest that "Dallas County's use of deadly weapons, risking Plaintiffs' lives, and arresting them without an arrest warrant while they posed no threat to the safety of any person, for purposes of obtaining fingerprints and photographs, indicates the obvious need for additional or different training." Doc. 133, Pls.' Resp., 15. But Dallas County argues that these allegations are conclusory and that Plaintiffs fail to sufficiently allege, among other elements of their claim, that Dallas County had inadequate training procedures. Doc. 125, Mot. to Dismiss, 16.

The Court agrees with Dallas County. "The failure to train municipal employees may . . . constitute a 'policy,' but only when it 'reflects a "deliberate" or "conscious" choice by a municipality.'" *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) (citation omitted). "To prevail on a 'failure-to-train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused

---

[11] Plaintiffs also allege that Dallas County failed to adequately supervise and discipline its officers. *See* Doc. 121, TAC, ¶ 379 (87). "The same elements" for a failure-to-train claim "apply to claims based upon failure-to-supervise or failure-to-discipline theories." *E.G. v. Bond*, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017) (citation omitted). Namely, "a claim based on a failure to act" requires Plaintiffs to allege: "(1) inadequacy of identified procedures, (2) deliberate indifference in adopting identified policies, and (3) a direct causal link between the identified policy and alleged injuries." *E.G. by Gonzalez v. Bond*, 2017 WL 3493124, at *4 (N.D. Tex. June 29, 2017) (citations omitted). Thus, for the same reasons Plaintiffs fail to a state claim for failure to train, see *infra* Section III.B.2, they fail to state a claim for failure to supervise or discipline. Namely, just as Plaintiffs have not sufficiently alleged inadequate training, they have not sufficiently alleged inadequate supervision or discipline. Consequently, Plaintiffs' failure-to-discipline and failure-to-supervise claims fail, too.

the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (citation omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Further, "[d]efects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (citation omitted). A complaint "typically" does so "by alleging facts related to the locality's actual training program." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (per curiam).

Here, the Court holds that Plaintiffs have not sufficiently alleged inadequate training by Dallas County. In their complaint, Plaintiffs allege in conclusory terms that Dallas County "fail[ed] to provide proper training . . . ." *See* Doc. 121, TAC, ¶ 364 (82); *see also id.* ¶ 366 (83). Though Plaintiffs list areas in which they believe Dallas County has "an inadequate policy of training," *see id.* ¶ 368 (83), they fail to allege Dallas County's training procedures—or lack thereof—with respect to each of these areas. Thus, they "provide[] no factual allegations about the content of [Dallas County's] training or how thorough or cursory it may have been." *Speck*, 606 F. App'x at 736. Likewise, though Plaintiffs suggest Dallas County has a "longstanding record[] of not providing officers . . . with adequate training," and that Dallas County's officers "were trained by individuals with little or no experience working in the field," Plaintiffs do not provide any factual support for these allegations. *See* Doc. 121, TAC, ¶¶ 371 (84), 373 (84). Rather, Plaintiffs are essentially "asking [this Court] to make the inference that a single alleged incident of misconduct means officers are inadequately trained." *See Speck*, 606 F. App'x at 736; *see also* Doc. 133, Pls.' Resp., 15–16 (reiterating the facts of Plaintiffs' encounter with Dallas County in an effort to demonstrate "specific

facts" supporting their failure-to-train claim). The Court will not make such an unwarranted inference and thus **DISMISSES** Plaintiffs' *Monell* claim against Dallas County.[12]

C.      *Whether to Grant Leave to Amend*

In their response to Dallas County's motion to dismiss, Plaintiffs ask the Court for leave to amend their complaint in the event that the Court finds the operative complaint deficient. Doc. 133, Pls.' Resp., 17. Nonetheless, as Dallas County points out, Plaintiffs failed to attach their proposed amended complaint—a requirement for a motion for leave to amend under Northern District of Texas Local Rule 15.1(b). Indeed, Plaintiffs do not even "state any material facts [they] would have included in the [proposed] amended complaint." *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citation omitted).

Additionally, Plaintiffs have now had five chances to sufficiently plead their claims over the course of one year and eight months: They filed one complaint in the Southern District of Florida and four different complaints with this Court. *See supra* Section I.B. Under these circumstances, it is clear that Plaintiffs "ha[ve] already pleaded [their] 'best case.'" *Brewster*, 587 F.3d at 768 (citation omitted).[13] Moreover, given that one year and eight months have passed since Plaintiffs filed this lawsuit in the Southern District of Florida, the Court finds that Plaintiffs have unduly delayed in seeking to add new allegations, and a sixth bite at the apple would unduly prejudice the remaining

---

[12] Because Plaintiffs failed to sufficiently allege Dallas County's training procedures, the Court need not consider the remaining elements of Plaintiffs' failure-to-train claim.

[13] Not only have Plaintiffs had five opportunities to plead their claim, but through two previous motions to dismiss, Dallas County has pointed out the same deficiencies that this Court finds in Plaintiffs' claim. *See* Doc. 29, Mot. to Dismiss, 11 (stating that "nowhere in the complaint do Plaintiffs identify a Dallas County policy of any kind"); Doc. 65, Mot. to Dismiss, 18 (contending that Plaintiffs fail to allege that Dallas County's "training policy procedures were inadequate").

Defendants. *See Hinds v. Orix Capital Mkts., L.L.C.*, 2003 WL 21350210, at *3 (N.D. Tex. June 10, 2003) (citation omitted) (instructing district courts to consider "undue delay" and "undue prejudice to the opposing part[ies]" in deciding whether to grant leave to amend). For all of these reasons, the Court **DENIES** Plaintiffs' request for leave to amend.

## IV.

## CONCLUSION

The Court declines to dismiss Plaintiffs' claim on statute-of-limitations grounds. Thus, to the extent Dallas County seeks dismissal of Plaintiffs' claim on this basis, the Court **DENIES** its motion. Nonetheless, the Court concludes that Plaintiffs have not sufficiently pled facts to support their § 1983 *Monell* claim. Accordingly, the Court **GRANTS** Dallas County's motion (Doc. 125) on this basis and **DISMISSES WITH PREJUDICE** Plaintiffs' § 1983 *Monell* claim against Dallas County. Finally, for the reasons already stated, the Court **DENIES** Plaintiffs leave to amend.

SO ORDERED.

SIGNED: March 26, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE