UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN B. AUBREY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0056-B |
| | § | |
| D MAGAZINE PARTNERS, L.P., et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Dallas's Motion to Dismiss Plaintiffs' Third Amended Complaint (Doc. 127), seeking dismissal of Plaintiffs' claims based on the statute of limitations and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court **GRANTS IN PART and DENIES IN PART** the motion (Doc. 127). Though the Court declines to dismiss Plaintiffs' 42 U.S.C. § 1983 claims on statute-of-limitations grounds, the Court **DISMISSES WITH PREJUDICE,** based on Plaintiffs' failure to state a claim under Rule 12(b)(6), all of Plaintiffs' § 1983 claims against City of Dallas. Further, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' malicious prosecution claim against City of Dallas based on sovereign immunity. Finally, the Court **DENIES** Plaintiffs' request to amend their complaint.

# I.

# BACKGROUND[1]

A. *Factual History*

1. The May 2016: The Tobolowsky murder investigation

Plaintiffs, Steven B. Aubrey and Brian E. Vodicka, are a married couple that lived in Dallas, Texas, when the following events occurred. Doc. 121, Third Am. Compl. (TAC), ¶¶ 27 (5), 38 (6). On May 13, 2016, Ira Tobolowsky died in a suspicious early morning fire at his home. *Id.* ¶ 28 (5). Days later, the Dallas Police Department (DPD) contacted Vodicka about the murder. *See id.* ¶ 36 (6).

Next, over a five-month period that began in May 2016, Plaintiffs allege, City of Dallas and its employees "submitted 11 perjured affidavits for search warrants," each of which "involved Aubrey, Vodicka, or both." *Id.* ¶ 46 (7–8). According to Plaintiffs, Lieutenant Derrick Cherry of the Dallas Fire-Rescue Department authored two of the affidavits; Detective Robert Ermatinger, Jr. of DPD authored three; and Detective Scott Robert Sayers of DPD authored the remaining six. *See id.* ¶¶ 51–160 (8–38). When Aubrey complained to City of Dallas's Public Integrity Unit about the affidavits, he claims his complaint "was investigated and ignored . . . ." *Id.* ¶ 341 (76).

Moreover, in May 2016, Detectives Ermatinger and Sayers allegedly obtained search warrants to investigate Plaintiffs in relation to the murder. *See id.* ¶¶ 43–44 (7). As part of this investigation, Plaintiffs allege that representatives of the City of Dallas and Dallas County executed search warrants

---

[1] Only pertinent facts for this motion to dismiss have been included for the sake of brevity. The third amended complaint consists of 487 paragraphs spanning 110 pages. Because the third amended complaint consists of inconsistent paragraph numbering, the Court cites the paragraph to which it refers, followed by the page number in parentheses, throughout this Order.

that permitted them "only to examine, photograph, and fingerprint Plaintiffs." *See id.* ¶¶ 105 (23), 184 (42). Yet, Plaintiffs allege, these representatives instead "decided to assault Plaintiffs with deadly force and risk Plaintiffs' lives without cause." *Id.* ¶ 188 (43). Specifically, Plaintiffs allege that the City and County employees "ambushed" Plaintiffs as they attempted to back out of their driveway by blocking Plaintiffs' vehicle, drawing firearms, and pointing them at Plaintiffs. *Id.* ¶ 190 (43–44). Subsequently, according to Plaintiffs, Aubrey had a gun pointed at his head, while Vodicka was pinned to the ground. *Id.* ¶ 190 (44). Plaintiffs allege that the arresting individuals did not have the authority to arrest Plaintiffs, because the warrant was only for the "examination, photographing and fingerprinting [of] Plaintiffs." *Id.* ¶ 193 (44).

About one year after these events, Plaintiffs explain, Detective Ermatinger had retired from DPD and "shar[ed] false information" with D Magazine, a local news outlet, about Plaintiffs and the Tobolowsky murder investigation. *See id.* ¶ 45 (7). Plaintiffs allege that Detective Ermatinger was "a constant source for leaking information" before he retired, too. *Id.* ¶ 250 (55).

2.  October 2016: Aubrey's arrest on prostitution charges

Additionally, in October 2016, Plaintiffs allege, an undercover DPD officer arranged to receive a massage from Aubrey at a hotel. *Id.* ¶ 224 (51). After the officer met Aubrey in a hotel room and put money on a desk in the room, additional DPD officers entered the room and arrested Aubrey for prostitution. *Id.* ¶¶ 233–34, 236 (52).

Following this arrest, Plaintiffs state that "[u]nidentified DPD sources immediately began anonymously providing false information about the arrest for 'prostitution' to local media outlets," such as that "Aubrey agreed to masturbation and sexual intercourse for $300." *Id.* ¶ 236 (52) (quotation marks omitted). Ultimately, the prostitution charges "were dropped." *Id.* ¶ 238 (53).

Plaintiffs suggest that this is "[b]ecause DPD arrested Aubrey for harassment purposes only . . . ." *Id.*

B.   *Procedural History*

Plaintiffs originally filed a complaint in the Southern District of Florida on May 17, 2018. *See* Complaint, *Aubrey v. D Magazine Partners, L.P.*, No. 18-CV-61117 (S.D. Fla. Nov. 8, 2018), ECF No. 1. The district court dismissed the complaint on November 8, 2018, due to a lack of personal jurisdiction. *See* Omnibus Order, *Aubrey v. D Magazine Partners, L.P.*, No. 18-CV-61117 (S.D. Fla. Nov. 8, 2018), ECF No. 122.[2]

Thereafter, Plaintiffs filed their complaint in this Court on January 8, 2019, bringing claims against Defendants D Magazine Partners, L.P.; Allison Media, Inc.; Jamie L. Thompson; Robert L. Ermatinger, Jr.; Scott Robert Sayers; Judge Eric Vaughn Moyé; City of Dallas; Dallas County; and Does 1-20.[3] *See* Doc. 3, Compl. One day later, Plaintiffs filed an amended complaint. *See* Doc. 4, Notice of Correction. In response to Plaintiffs' amended complaint, all named Defendants filed motions to dismiss. *See* Doc. 21, Mot. to Dismiss; Doc. 29, Mot. to Dismiss; Doc. 31, Mot. to Dismiss; Doc. 32, Mot. to Dismiss. Subsequently, Plaintiffs sought to amend their operative complaint. *See* Doc. 47, Pls.' Mot. for Leave to File Am. Compl. Three days later—before this Court ruled on Plaintiffs' motion—Plaintiffs filed another motion for leave to amend the complaint, which

_____

[2] Since the date on which Plaintiffs' complaint was dismissed in the Southern District of Florida is relevant to the Court's statute-of-limitations analysis, the Court must clarify this date. The order dismissing Plaintiffs' claims is dated November 8, 2018, but the order was not entered on the Southern District of Florida's electronic filing system until November 9, 2018. *See id.* Because Plaintiffs could not have received notice of the order prior to November 9, 2018, this is the date the Court relies upon in considering City of Dallas's statute-of-limitations argument.

[3] The Court hereinafter refers to Defendants City of Dallas, Robert L. Ermatinger, Jr., and Scott Robert Sayers collectively as "the City Defendants." Further, the Court refers to Defendants D Magazine Partners, L.P., Allison Media, Inc., and Jamie L. Thompson collectively as "the Media Defendants."

Defendants opposed. *See* Doc. 50, Pls.' Mot. for Leave to File Second Am. Compl., 1–2. The Court granted Plaintiffs' motion, and Plaintiffs then filed their second amended complaint. *See* Doc. 52, Electronic Order; Doc. 54, Pls.' Second Am. Compl.

Subsequently, all Defendants moved to dismiss the claims in the operative complaint. *See* Doc. 63, Mot. to Dismiss; Doc. 65 Mot. to Dismiss; Doc. 67, Mot. to Dismiss; Doc. 71, Mot. to Dismiss; Doc. 72, Mot. to Dismiss; Doc. 73, Mot. to Dismiss. On June 20, 2019, the Court dismissed all claims against Defendant Judge Moyé. *See* Doc. 92, Mem. Op. & Order.

Thereafter, Plaintiffs sought leave to file a third amended complaint. *See* Doc. 102, Pls.' Mot. for Leave to File Third Am. Compl. The Court granted leave to amend only "insofar as they [sought] to include allegations of six newly-discovered search-warrant affidavits." Doc. 114, Order, 10. Thus, the third amended complaint (Doc. 121) is now the operative complaint in this case.

City of Dallas filed its motion to dismiss on January 6, 2020. *See* Doc. 127, Mot. to Dismiss. Plaintiffs filed a response to this motion on January 27, 2020. *See* Doc. 140, Pls.' Resp. Finally, on February 10, 2020, City of Dallas submitted its reply brief in support of its motion. *See* Doc. 148, Def.'s Reply. Accordingly, the motion is now ripe for review.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim *and* referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up). And "[a]lthough dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017).

## III.

## ANALYSIS

Plaintiffs bring five claims against City of Dallas: (1) a § 1983 claim based on unreasonable searches; (2) a § 1983 claim based on the use of deadly force; (3) a § 1983 claim based on false arrest

and false imprisonment; (4) a § 1983 claim based on the distribution and misuse of confidential information; and (5) a malicious prosecution claim. *See* Doc. 121, TAC, ¶¶ 351–60 (79–81), ¶¶ 361–63 (81–82), ¶¶ 382–90 (88–89), ¶¶ 391–94 (90), ¶¶ 395–407 (90–93).[4]

City of Dallas moves to dismiss the four § 1983 claims on two grounds: (1) statute of limitations, and (2) failure to state a claim. *See* Doc. 127, Mot. to Dismiss, 6, 12–21, 23–24. In addition, City of Dallas seeks dismissal of the malicious prosecution claim based on governmental immunity. *See id.* at 21–23.

Below, the Court first addresses whether the applicable statute of limitations bars Plaintiffs' § 1983 claims. The Court ultimately declines to conclude, at this stage of the proceedings, that the statute of limitations bars Plaintiffs' § 1983 claims.

Second, the Court analyzes the sufficiency of Plaintiffs' allegations on each of their § 1983 claims. Because the Court finds that Plaintiffs failed to sufficiently plead their § 1983 claims, the Court dismisses these claims based on Federal Rule of Civil Procedure 12(b)(6).

Next, the Court turns to Plaintiffs' malicious prosecution claim, which, the Court concludes, is barred by sovereign immunity.

Finally, the Court turns to Plaintiffs' request for leave to amend their complaint, which the Court denies in light of the history of this case.

A.     *Whether the Applicable Statute of Limitations Bars Plaintiffs' § 1983 Claims*

The Court declines to hold, at the motion-to-dismiss stage of proceedings, that Plaintiffs' § 1983 claims are time-barred by the applicable statute of limitations. Plaintiffs do not dispute that

---

[4] Aubrey, rather than both Plaintiffs, bring claims (3) and (5) against City of Dallas.

the Texas statute of limitations of two years applies to this case. *See* Doc. 127, Mot. to Dismiss, 6; Doc. 140, Pls.' Resp., 6.[5] Further, City of Dallas explains, and Plaintiffs fail to contest, that Plaintiffs' claims accrued in May of 2016. *See* Doc. 127, Mot. to Dismiss, 6. Because Plaintiffs filed this case on January 8, 2019—over two years and seven months after the date of accrual—City of Dallas raises a statute-of-limitations affirmative defense under Federal Rule of Civil Procedure 8(c)(1), contending that the two-year statute of limitations bars Plaintiffs' § 1983 claims. *Id.*

But Plaintiffs argue that Texas Civil Practice & Remedies Code § 16.064 allows the statute of limitations to toll for sixty days since they filed "these same original claims in the U.S. District Court, Southern District of Florida" within the two-year limitations period. *See* Doc. 140, Pls.' Resp., 4.

Under § 16.064, the applicable statute of limitations is suspended:

> for the period between the time one action is dismissed and the time the same action is re-filed in a different jurisdiction if (1) the original action was dismissed for lack of jurisdiction, and (2) the second action was commenced in the proper jurisdiction no later than the 60th day following the dismissal.

*Mathers Family Tr. ex rel. Mathers v. Cagle*, 2013 WL 3455489, at *5 (N.D. Tex. July 8, 2013) (citing TEX. CIV. PRAC. & REM. CODE § 16.064(a)). But the statute of limitations is not tolled under § 16.064 "if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction." TEX. CIV. PRAC. & REM. CODE § 16.064(b).

---

[5] "The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citation omitted). Texas has a two-year statute of limitations for personal-injury claims. *See* TEX. CIV. PRAC. & REM. CODE § 16.003.

Here, Plaintiffs re-filed in the Northern District of Texas sixty days after the dismissal in the Southern District of Florida for lack of personal jurisdiction,[6] thus satisfying both elements of § 16.064(a). *See* Tex. Civ. Prac. & Rem. Code § 16.064(a). Nevertheless, City of Dallas argues that Plaintiffs filed in Florida "with intentional disregard of proper jurisdiction." Doc. 127, Mot. to Dismiss, 11 (quotation marks omitted) (quoting Tex. Civ. Prac. & Rem. Code § 16.064(b)). Specifically, City of Dallas contends that Plaintiffs "made a strategic decision to file suit in Florida" and "had full knowledge that all the Defendants' alleged conduct occurred in Dallas, Texas." *Id.* at 10.

In response, Plaintiffs explain that they originally filed suit in Florida based upon one Defendant's alleged minimum contacts with the forum state. Doc. 140, Pls.' Resp., 7 (citing *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Specifically, Plaintiffs state that because the actions giving rise to Plaintiffs' claims against D Magazine, another Defendant in this case, took place while Plaintiffs resided in Florida, Plaintiffs had a "strong basis" for jurisdiction in Florida over D Magazine. *Id.* at 9. And based on this jurisdictional theory, Plaintiffs argue that they brought their claims against "all Defendants in Florida in good faith . . . ." *Id.*

---

[6] The district court dismissed Plaintiffs' claims on November 9, 2018. *See supra* at 4 n.2. Plaintiffs filed suit in this Court on January 8, 2019. *See* Doc. 1, Compl. Thus, Plaintiffs filed suit on the sixtieth day following dismissal, and the Court therefore rejects City of Dallas's suggestion that, irrespective of the tolling, Plaintiffs' claims were untimely. *See* Doc. 127, Mot. to Dismiss, 11. Further, even assuming, for the sake of argument, that Plaintiffs' claims were dismissed on November 8, 2018, City of Dallas has not demonstrated that this is the date upon which the district court's dismissal "[became] final . . . ." Tex. Civ. Prac. & Rem. Code § 16.064(a); *see, e.g., Henneberger v. Ticom Geomatics*, 2018 WL 6589472, at *5 (W.D. Tex. Dec. 12, 2018) (concluding a dismissal based on a lack of personal jurisdiction became final when it was affirmed on appeal).

Nonetheless, City of Dallas suggests that Plaintiffs' allegations demonstrate an intentional disregard of proper jurisdiction. Doc. 127, Mot. to Dismiss, 9. For example, City of Dallas points out that Plaintiffs asserted, in their initial complaint in the Southern District of Florida, that venue in Texas would be improper due to prejudice that Plaintiffs would suffer if Plaintiffs brought suit there. *Id.* at 9–10.

Though Plaintiffs may have known that their claims hinged on conduct that occurred in Texas, the Court holds that, at the motion-to-dismiss stage, this does not amount to an intentional disregard of proper jurisdiction. The Supreme Court of Texas has clarified that "a mistake of law may be a sufficient excuse" to satisfy a plaintiff's burden of demonstrating that "he did not intentionally disregard proper jurisdiction when filing the case." *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 312–13 (Tex. 2010) (citation omitted).

Further, Section 16.064 "is to be given a liberal construction to effectuate 'its manifest objective—relief from penalty of limitation bar to one who has *mistakenly* brought his action "in the wrong court."'" *Clary Corp. v. Smith*, 949 S.W.2d 452, 461 (Tex. App.—Fort Worth 1997, pet. denied) (emphasis in original) (quoting *Burford v. Sun Oil Co.*, 186 S.W.2d 306, 310 (Tex. Civ. App.—Austin 1944, writ ref'd w.o.m.)). Following this objective, Texas courts have noted that "a mistake of law may be a sufficient excuse under [§] 16.064 . . . because capable lawyers often make good faith mistakes about the jurisdiction of Texas courts . . . ." *Integrity Glob. Sec., LLC v. Dell Mktg. L.P.*, 2019 WL 2147622, at *9 (Tex. App.—Austin May 17, 2019) (quotation marks omitted) (citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 312 (Tex. 2010)). In contrast, § 16.064 "does not protect a plaintiff who misfiles as a part of a 'strategic decision to seek relief' from a court that lacked jurisdiction." *Id.* (citing *In re United Servs. Auto. Ass'n*, 307 S.W.3d at 313).

In this case, Plaintiffs assert that they mistakenly relied on Florida's long-arm statute to confer personal jurisdiction over all Defendants since one Defendant, D Magazine, harmed them while Plaintiffs lived in Florida. Doc.140, Pls.' Resp., 9. The Court notes that this could constitute a good-faith mistake of law—rather than a strategic decision. *See Integrity Glob. Sec., LLC*, 2019 WL 2147622, at \*9. Because the Court lacks evidence that Plaintiffs filed suit in Florida in intentional disregard of jurisdiction, the Court declines to dismiss Plaintiffs' claims § 1983 against City of Dallas based on the statute of limitations at the motion-to-dismiss stage.

B.     *Whether Plaintiffs Sufficiently Pled Their § 1983 Claims*

    1.     Section 1983 claim based on the use of deadly force

    The Court holds that Plaintiffs have not sufficiently pled their § 1983 claim based on the use of deadly force against City of Dallas. This claim pertains to Plaintiffs' May 2016 encounter with Dallas County and City of Dallas employees, in which Plaintiffs allege that they were "ambushed" outside of their home despite "pos[ing] no threat to the safety of anyone . . . ." *See* Doc. 121, TAC, ¶¶ 188–90 (43–44). Plaintiffs allege that City of Dallas, along with Dallas County and John Doe defendants, violated Plaintiffs' Fourth Amendment rights by using excessive force in violation of 42 U.S.C. § 1983. Doc. 121, TAC, ¶¶ 361–81 (81–88). City of Dallas,[7] however, argues that Plaintiffs failed to plead enough facts to sustain their § 1983 claim. *See* Doc. 127, Mot. to Dismiss, 17.

    The Court agrees. Section 1983 provides a federal cause of action against "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes

---

[7] City of Dallas does not clearly include other Defendants in its motion to dismiss. *See* Doc. 127, Mot. to Dismiss. Consequently, the Court considers the motion under the assumption that it pertains only to City of Dallas as a municipality.

to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." § 1983. "To state a claim under [§] 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person or entity acting under color of state law." *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 874 (N.D. Tex. 2018) (citations omitted).

But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, municipal liability under § 1983 "results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski*, 237 F.3d at 579. This theory of liability is commonly referred to as a "*Monell* claim[.]" *See, e.g.*, *Ramirez v. Abreo*, 2010 WL 11565455, at *1 (N.D. Tex. May 27, 2010).

To establish a *Monell* claim, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citation omitted). "The ultimate question" in assessing a motion to dismiss a *Monell* claim is "whether [the plaintiff] has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy that resulted in injury to [the plaintiff.]" *Mohamed for A.M.*, 300 F. Supp. 3d at 875.

For purposes of municipal liability under § 1983, "[o]fficial policy usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Davenport v. City of Garland*, 2010 WL 1779620, at *2 (N.D. Tex.

Apr. 9, 2010), *adopted by* 2010 WL 1779619, at *1 (N.D. Tex. Apr. 30, 2010) (quoting *Piotrowski*, 237 F.3d at 579; *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Additionally, the "official policy" supporting a § 1983 claim may be either an "unconstitutional official policy" or "a facially innocuous policy. . . ." *Piotrowski*, 237 F.3d at 579. The latter, however, only "support[s] liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* (citation omitted).

Due to these nuances, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional." *Id.* at 579–80.

Here, Plaintiffs allege that four different policies contributed to the alleged violation of their Fourth Amendment rights: (1) use of deadly force to examine, photograph, and fingerprint; (2) failure to "knock and announce"; (3) inadequate training; and (4) inadequate discipline and supervision. *See* Doc. 121, TAC, ¶¶ 363–65 (82–83), 379 (87). The Court will consider policies (1) and (2) together, followed by policies (3) and (4) together. Due to Plaintiffs' failure to sufficiently allege a policy or custom, the Court dismisses this § 1983 claim in full.

a.      *Use of deadly force and failure to knock and announce*

Plaintiffs allege that City of Dallas has a policy "concerning the use of deadly force to examine, photograph and fingerprint," which "allows police officers to violate citizens' constitutional rights . . . ." *Id.* ¶ 362 (81). Moreover, Plaintiffs contend that employees of City of Dallas "disregard[ed] . . . Plaintiffs' right to knock-and-announce . . . ." *Id.* ¶ 188 (43). City of Dallas, on the other hand, suggests that Plaintiffs have not sufficiently pled "the existence of a City policy or custom of alleged excessive use of force." Doc. 127, Mot. to Dismiss, 20.

As a preliminary matter, the Court must first determine which definition of "official policy" Plaintiffs rely upon. *See Davenport*, 2010 WL 1779620, at *2. In describing City of Dallas's policies, Plaintiffs list several "General Orders" of DPD regarding stakeouts and deadly force. *See* Doc. 121, TAC, ¶¶ 171–80 (40–42). But Plaintiffs do not argue that these officially adopted and promulgated policies created the alleged constitutional violation. Instead, Plaintiffs argue that the force used to examine, photograph, and fingerprint them was excessive, and the circumstances did not warrant the use of force authorized by the written policies. *Compare id.* ¶¶ 177–80 (41–42) (identifying policies stating that deadly force and drawing a firearm require a degree of threat) *with* ¶¶ 191–92 (44) (alleging that Plaintiffs did not pose the requisite threat to justify deadly force and the drawing of weapons). And Plaintiffs do not suggest that City of Dallas's alleged failure to "knock and announce" its presence resulted from any official policy. Thus, Plaintiffs' claim against City of Dallas rests upon the second definition of official policy: a widespread practice or custom.

To establish a custom, Plaintiffs must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowoski*, 237 F.3d at 582 (citation omitted). Prior incidents used to establish a pattern "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipality] employees." *Webster*, 735 F.2d at 842. Thus, the prior incidents alleged "cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (emphasis in original) (citations omitted); *see also Peterson*, 588 F.3d at 851 (5th Cir. 2009) ("A pattern requires similarity and specificity[.]").

Further, "[i]t is generally accepted that a single incident does not show a policy or custom, nor is a single incident sufficient to infer a policy based on customary practice." *Moreno v. City of Dallas*, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015) (citation omitted).

In their complaint, Plaintiffs cite to seven incidents of excessive force, in addition to their own incident, allegedly committed by DPD. *See* Doc. 121, TAC, ¶ 194 (44–46). Each incident, as City of Dallas points out, involves an officer shooting an individual. *See id.* Given that Plaintiffs' allegations of excessive force do not involve any shooting, City of Dallas contends that the instances "cited by Plaintiffs are not fairly similar to Plaintiffs' allegations." Doc. 127, Def.'s Mot. to Dismiss, 19 (quotation marks omitted).

This Court agrees. Here, Plaintiffs allege that City of Dallas employees pointed guns at them, pinned one to the ground, and placed a gun to the other's head. *See* Doc. 121, TAC, ¶ 190 (43–44). In contrast, the incidents upon which Plaintiffs rely are instances in which police officers *shot* firearms at individuals—not merely *pointed* firearms at individuals. Moreover, none of these incidents, based on Plaintiffs' allegations, involved the use of force to examine, photograph, or fingerprint a suspect. *See id.* ¶¶ 194 (44–46), 362 (81). Accordingly, even examining the pleadings in a light most favorable to Plaintiffs, the Court holds that Plaintiffs insufficiently pled City of Dallas's alleged custom of using deadly force when examining, photographing, and fingerprinting suspects.

With respect to City of Dallas's alleged custom of failing to knock and announce, see *id.* ¶ 365 (82–83), Plaintiffs do not allege any other instances—aside from their own encounter with City of Dallas employees—of such a failure. *See id.* Thus, the Court cannot infer that Dallas County has a

custom of "ignor[ing] the constitutional knock-and-announce requirement, " see Doc. 140, Pls.' Resp., 20, and the Court holds that Plaintiffs insufficiently pled the existence of such a custom.[8]

In sum, Plaintiffs have not sufficiently alleged that City of Dallas has an "official policy or custom" of either: (1) using deadly force to examine and fingerprint, or (2) failing to knock and announce. *See Piotrowski*, 237 F.3d at 579.

The Court acknowledges that a single incident of unconstitutional activity may be sufficient to impose *Monell* liability where "the actor or actors involved had been given official policy-making authority." *Renfro v. City of Kaufman*, 27 F. Supp. 2d 715, 717 (N.D. Tex. 1998) (citation omitted). But Plaintiffs do not allege that an official policymaker was involved in City of Dallas's alleged violations of Plaintiffs' rights. *See* Doc. 121, TAC, ¶ 188 (43). Rather, Plaintiffs repeatedly assert that unnamed City of Dallas employees utilized excessive force against Plaintiffs. *See, e.g.*, Doc. 140, Pls.' Resp., 19; Doc. 121, TAC, ¶ 188 (43). To the extent Plaintiffs also allege that City of Dallas "reached an agreement" to conduct the stakeout of Plaintiffs' home, see Doc. 121, TAC, ¶ 187 (43), this allegation is conclusory and lacks any factual substantiation. *See Pinedo v. City of Dallas*, 2015 WL 221085, at *6 (N.D. Tex. Jan. 15, 2015) (requiring the plaintiff's allegations of a policy or custom to "contain specific facts") (citations omitted). Moreover, in their reply, Plaintiffs assert that "a person with the power to decide on behalf of the final policy making authority determined that

---

[8] Because Plaintiffs have not sufficiently alleged an official policy of deadly force or of failing to knock and announce, the Court need not consider the remaining elements of Plaintiffs' *Monell* claim based on these theories.

scheduling future use of excessive force . . . was the City's policy." Doc. 140, Pls.' Resp, 19. This allegation, too, is devoid of factual substantiation.[9]

Given that Plaintiffs have not sufficiently alleged that their single incident involved an official policymaker, Plaintiffs' attempt to invoke the single-incident exception fails. *See* Doc. 140, Pls.' Resp., 14. Accordingly, the Court proceeds to examine Plaintiffs' next theory of *Monell* liability: failure to train.

> b.      *Failure to train*[10]

Plaintiffs also allege in their *Monell* claim that City of Dallas failed to train its officers on the use of: (1) detention and seizure procedures; (2) excessive and/or deadly force; (3) de-escalation tactics and "less deadly means"; and (4) cover and the pursuit of a suspect. Doc. 121, TAC, ¶ 367 (83). Plaintiffs suggest that "[City of Dallas's] use of deadly weapons . . . that risked Plaintiffs' lives while they posed no threat, to arrest them without an arrest warrant for purposes  of obtaining fingerprints and photographs indicates the obvious need for more or different training." Doc. 140,

---

[9] Plaintiffs argue that because a DPD "General Order" requires supervisory approval for a "stakeout," the alleged incident must have involved a final policymaker. *See* Doc. 121, TAC, ¶¶ 184 (42), 171 (40), 173 (41).  But a supervisor is not necessarily an official policymaker. *See Doe v. City of Springtown*, 2019 WL 5685369, at *4 (N.D. Tex. Aug. 26, 2019), *adopted at* 2019 WL 5684492 (N.D. Tex. Nov. 1, 2019) (stating that a "policymaker must have final policymaking authority and take the place of the governing body in a designated area of city administration") (citation omitted).

[10] Plaintiffs also allege that City of Dallas failed to adequately supervise and discipline its officers. *See* Doc. 121, TAC, ¶  379 (87). "The same elements" for a failure-to-train claim "apply to claims based upon failure-to-supervise or failure-to-discipline theories." *E.G. v. Bond*, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017) (citation omitted). Namely, "a claim based on a failure to act" requires Plaintiffs to allege: "(1) inadequacy of identified procedures, (2) deliberate indifference in adopting identified policies, and (3) a direct causal link between the identified policy and alleged injuries." *E.G. by Gonzalez v. Bond*, 2017 WL 3493124, at *4 (N.D. Tex. June 29, 2017) (citations omitted). Thus, for the same reasons Plaintiffs fail to a state claim for failure to train, see *infra* Section III.B.1.b, they fail to state a claim for failure to supervise or discipline. Namely, just as Plaintiffs have not sufficiently alleged inadequate training, they have not sufficiently alleged inadequate supervision or discipline.

Pls.' Resp., 20. But City of Dallas argues that "Plaintiffs provide only a conclusory, unsupported listing of [City of Dallas's] deficient training areas." Doc. 127, Mot. to Dismiss, 20 (citing Doc. 121, TAC, ¶¶ 198, 200 (47)). Accordingly, City of Dallas contends that Plaintiffs have insufficiently alleged that City of Dallas has inadequate use-of-force training. *Id.*

The Court agrees. "The failure to train municipal employees may . . . constitute a policy, but only when it reflects a deliberate or conscious choice by a municipality." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) (citation and quotation marks omitted). "To prevail on a 'failure-to-train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (citation omitted). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). Further, "[d]efects in a particular training program must be specifically alleged." *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (citation omitted). A complaint "typically" does so "by alleging facts related to the locality's actual training program." *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (per curiam).

Here, the Court holds that Plaintiffs have not sufficiently alleged inadequate training by City of Dallas. In their complaint, Plaintiffs allege in conclusory terms that City of Dallas "fail[ed] to provide proper training . . . ." *See* Doc. 121, TAC, ¶ 364 (82); *see also id.* ¶ 366 (83). Though Plaintiffs list areas in which they believe City of Dallas has "an inadequate policy of training," *see id.* ¶ 368 (83), they fail to allege City of Dallas's training procedures—or lack thereof—with respect to each of these areas. Thus, they "provide[] no factual allegations about the content of [City of

Dallas's] training or how thorough or cursory it may have been." *Speck*, 606 F. App'x at 736. Likewise, though Plaintiffs suggest City of Dallas has a "longstanding record[] of not providing officers . . . with adequate training," Doc. 121, TAC, ¶ 371 (84), and that City of Dallas's officers "were trained by individuals with little or no experience working in the field," *id*. ¶ 373 (84), Plaintiffs do not provide any factual support for these allegations.

Rather, Plaintiffs are essentially "asking [this Court] to make the inference that a single alleged incident of misconduct means officers are inadequately trained." *See Speck*, 606 F. App'x at 736; *see also* Doc. 140, Pls.' Resp., 20–21 (emphasizing the amount of officers involved in Plaintiffs' single encounter with officers, rather than alleging City of Dallas's deficient training procedures). The Court will not make such an unwarranted inference and thus **DISMISSES** Plaintiffs' *Monell* claim against City of Dallas premised on the use of deadly force.[11]

2.    Section 1983 claim based on unreasonable searches

Plaintiffs have not alleged facts sufficient to support their § 1983 claim against City of Dallas based on unreasonable searches. This § 1983 claim arises from Plaintiffs' allegations that City of Dallas, through employees in the Dallas Fire-Rescue Department and DPD, applied for search warrants based on falsified information for a period of nearly five months. *See* Doc. 121, TAC, ¶¶ 353 (79), 46 (7–8). Relying upon these allegations, Plaintiffs bring a § 1983 claim against City of Dallas based on its "policy concerning the authoring and use of fraudulent and falsified search warrant affidavits, [which] allows police officers to violate citizens' constitutional rights under the Fourth Amendment." *Id*. ¶ 352 (79).

---

[11] Because Plaintiffs failed to sufficiently allege City of Dallas's training procedures, the Court need not consider the remaining elements of Plaintiffs' failure-to-train claim.

With respect to this § 1983 claim, Plaintiffs allege five different policies: (1) the "use of falsified search warrant affidavits"; (2) inadequate investigations into incidents reported to superiors; (3) inadequate reporting procedures "to monitor the use of unconstitutional searches and seizures"; (4) inadequate discipline and a lack of supervision; and (5) inadequate training. *See* Doc. 121, TAC, ¶¶ 166–67 (39).

City of Dallas contends that Plaintiffs have failed to allege a policy or custom to support its § 1983 claim. *See* Doc. 127, Mot. to Dismiss, 13–14. The Court addresses the sufficiency of Plaintiffs' allegations with respect to policies (1); followed by (2) and (3) jointly; followed by (4) and (5) jointly. Ultimately, the Court concludes that Plaintiffs have not sufficiently pled the existence of any policy or custom to support their § 1983 claim based on unreasonable searches.

a.       *Use of falsified search-warrant affidavits*

Plaintiffs contend that City of Dallas has "a policy and practice of fabricating facts or falsifying facts in its search warrant affidavits to unlawfully obtain search warrants from local . . . criminal judges or magistrates." Doc. 121, TAC, ¶ 358 (80).

Again, the Court must first determine which definition of "official policy" Plaintiffs attempt to utilize. *See Davenport*, 2010 WL 1779620, at *2. In their complaint, Plaintiffs make no reference to any officially adopted policies of City of Dallas regarding search-warrant affidavits. *See generally* Doc. 121, TAC. Rather, Plaintiffs suggest that City of Dallas's "use of falsified affidavits on Plaintiffs, alone, constituted a widespread pattern and practice." *Id.* ¶ 167 (39). Thereafter, Plaintiffs cite two additional examples that they believe demonstrate that "it is customary for DPD to intentionally falsify its affidavits . . . ." *Id.* ¶ 167 (39–40). Accordingly, Plaintiffs again rely upon the second definition of official policy—a widespread practice or custom.

As explained above, to establish a custom, Plaintiffs must allege a "pattern of *similar* violations," which "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipality] employees." *See Estate of Davis*, 406 F.3d at 383 (emphasis in original) (citations omitted); *Webster*, 735 F.2d at 842.

Here, to demonstrate a custom, Plaintiffs rely on eleven search-warrant affidavits authored by three different City of Dallas employees and relied upon in investigating Plaintiffs. *See* Doc. 121, TAC, ¶¶ 46–157 (7–37). These affidavits, Plaintiffs allege, spanned a period of roughly five months. *Id.* ¶ 46 (7–8). The Court notes that these allegations, standing alone, fall far short of establishing a pattern that "occurred *for so long or so frequently*" that the falsification of affidavits is "the expected, accepted practice of [City of Dallas] employees." *See Webster*, 735 F.2d at 842 (emphasis added). Specifically, the isolated actions of three employees over a five-month period does not create "notice of a pattern of similar violations" necessary to establish a § 1983 claim based on a custom. *See Estate of Davis*, 406 F.3d at 383 (emphasis omitted) (citations omitted).

But Plaintiffs also allege two additional incidents to support their claim that City of Dallas has an official custom of falsifying search-warrant affidavits. *See* Doc. 121, TAC, ¶ 167 (39–40). In the first incident, occurring in 2013, a DPD officer shot a mentally ill man. *Id.* His partner, another DPD officer, claimed that the man threatened them with a knife. *Id.* According to Plaintiffs, when a surveillance video demonstrated that the man did not threaten the officers, the DPD officer was suspended for 15 days due to his "untruthful[ness] on an affidavit . . . ." *Id.* ¶ 167 (40). The Court finds this incident distinct from those alleged in Plaintiffs' case. First, this incident did not involve a search-warrant affidavit, whereas Plaintiffs rely on falsified search-warrant affidavits to support their

claim. *See id.* ¶¶ 353 (79), 46 (7–8). Second, this incident involved the shooting of a man by a police officer—not the police's investigation of a murder. In reality, the only similarity this incident shares with Plaintiffs' case is an allegation of untruthfulness by an officer. This is not sufficient to establish a custom under § 1983. *See Estate of Davis*, 406 F.3d at 383.

Likewise, the second incident Plaintiffs rely upon involves the untruthfulness of a DPD officer—but it shares no other similarities with Plaintiffs' case. The second incident pertains to the conduct of a DPD officer who was fired in 2018 after he allegedly: lied to a supervisor; used inappropriate force; failed to conduct a proper traffic stop; "entered inaccurate information into a department report"; and falsified doctors' notes. Doc. 121, TAC, ¶ 167 (40). Aside from involving the untruthfulness of an officer, this incident bears no similarity to Plaintiffs' allegations of falsified search-warrant affidavits.

Accordingly, the Court finds that Plaintiffs' allegations of the eleven falsified search-warrant affidavits, together with the two alleged incidents of DPD officer misconduct, do not constitute "a pattern of *similar* violations . . . ." *See Estate of Davis*, 406 F.3d at 383 (emphasis in original) (citations omitted). Thus, Plaintiffs have failed to establish that City of Dallas has an official custom or policy of falsifying search-warrant affidavits.[12]

       *b.*    *Inadequate investigations into incidents reported to superiors and inadequate reporting procedures*

Next, Plaintiffs suggest that City of Dallas has a policy of "inadequa[te] . . . investigations into incidents reported to superiors" and "lack of . . . reporting procedures to monitor the use of

---

[12] Since Plaintiffs have not sufficiently alleged an official policy of falsifying search-warrant affidavits, the Court need not consider the remaining elements of Plaintiffs' *Monell* claim based on these theories.

unconstitutional searches and seizures by the City employees." *See* Doc. 121, TAC, ¶ 166 (39). Given that Plaintiffs do not cite to any officially adopted policy of City of Dallas, the Court assumes that Plaintiffs are, once again, alleging a custom.

But Plaintiffs offer no factual allegations to support a custom. *See generally*, Doc. 121, TAC. The most closely related allegation appears to be Plaintiffs' allegation that Aubrey reported the falsified search-warrant affidavits to City of Dallas's Public Integrity Unit. *See id.* ¶ 341 (76).

This, however, does not demonstrate "a pattern of abuses that transcends the error made in a single case." *See Piotrowoski*, 237 F.3d at 582 (citation omitted). Accordingly, Plaintiffs have not established that City of Dallas has a policy or custom of inadequately investigating incidents reported to superiors, nor of inadequate reporting procedures.[13]

    c.    *Failure to train*[14]

Plaintiffs also allege that City of Dallas has not adequately trained its detectives to: (1) "understand the significance of giving an oath to a judge"; (2) "distinguish between truthful and untruthful facts"; (3) "verify facts before presenting them in sworn affidavits to . . judges"; (4) "avoid relying on untruthful hearsay in affidavits to . . . judges"; and (5) "update [their] presentation of 'facts' to . . . judges based upon subsequently learned truth." Doc. 121, TAC, ¶ 162 (38).

---

[13] Given that Plaintiffs have not sufficiently alleged an official policy of inadequate investigations or reporting procedures, the Court does not address the remaining elements of Plaintiffs' *Monell* claim based on these theories.

[14] Plaintiffs also allege that City of Dallas failed to adequately supervise and discipline its officers. *See* Doc. 121, TAC, ¶ 166 (38). As noted above, "[t]he same elements" for a failure-to-train claim "apply to claims based upon failure-to-supervise or failure-to-discipline theories." *E.G.*, 2017 WL 129019, at *3 (citation omitted). Just as Plaintiffs have not sufficiently alleged inadequate training, they have not sufficiently alleged inadequate supervision or discipline. Thus, Plaintiffs' failure-to-discipline and failure-to-supervise claims fail, too.

In its motion to dismiss, City of Dallas contends that Plaintiffs' allegations are insufficient to state a failure-to-train claim, "because Plaintiffs fail to plead any facts from which the Court could rationally infer that there were any system deficiencies in police officer training" or that "police officers were inadequately trained." Doc. 127, Mot. to Dismiss, 15.

This Court agrees with City of Dallas, holding that Plaintiffs have not demonstrated the inadequacy of City of Dallas's training procedures. Like Plaintiffs' failure-to-train claim based on deadly force, see *supra* Section III.B.1.b, Plaintiffs' failure-to-train claim based on the falsification of search-warrant affidavits is not supported by any allegations of City of Dallas's training procedures. Instead, Plaintiffs summarily list areas in which they believe City of Dallas is deficient in training its detectives. *See* Doc. 121, TAC, ¶ 162 (38). Again, in the absence of allegations of City of Dallas's actual training procedures, this Court refuses "to make the inference" that Plaintiffs' stand-alone experience with City of Dallas demonstrates inadequate training. *See Speck*, 606 F. App'x at 736. Thus, Plaintiffs have not sufficiently alleged an official custom or policy based on City of Dallas's alleged failure to train.[15]

In sum, Plaintiffs have failed to allege an official custom or policy to support their § 1983 *Monell* claim based on unreasonable searches. Thus, the Court **DISMISSES** this claim against City of Dallas.

3.    Section 1983 claim based on false arrest and false imprisonment

The Court holds that Aubrey has not sufficiently pled his § 1983 claim against City of Dallas based on false arrest and imprisonment. In addition to the above § 1983 claims, Aubrey brings a

_____

[15] Because Plaintiffs have not sufficiently alleged inadequate training, the Court need not consider the remaining elements of Plaintiffs' failure-to-train claim.

§ 1983 *Monell* claim against City of Dallas based on its alleged false arrest and imprisonment of Aubrey on prostitution charges in October of 2016. *See* Doc. 121, TAC, ¶¶ 382–90 (88–89). As City of Dallas points out, however, Aubrey does not set out factual allegations sufficient for a court to infer that City of Dallas has a policy or practice of false arrest and imprisonment. *See* Doc. 127, Def.'s Mot. to Dismiss, 21. Rather, in his response, Aubrey mentions only two instances of alleged false arrest and imprisonment to support his claim—both of which involved him. *See* Doc. 140, Pls.' Resp., 21 ("Aubrey has been injured by the same policy twice.").

These two allegations, standing alone, fall far short of establishing a pattern that "occurred *for so long or so frequently*" that false arrest and imprisonment is "the expected, accepted practice of [City of Dallas] employees." *See Webster*, 735 F.2d at 842 (emphasis added). Thus, the Court concludes that Aubrey has not established an official policy or custom to support his § 1983 *Monell* claim based on false arrest and imprisonment and **DISMISSES** this claim against City of Dallas.[16]

 **4.**  <u>Section 1983 claim based on the distribution and misuse of confidential information</u>

Finally, Plaintiffs have failed to plead a § 1983 claim based upon the alleged distribution of confidential information. In their complaint, Plaintiffs bring a § 1983 claim against City of Dallas based on its official policy or custom of "distribut[ing] to the media confidential information from its active murder investigation," which "allows police officers to violate citizens' constitutional rights . . . ." Doc. 121, TAC, ¶ 396 (90–91). Specifically, Plaintiffs allege that Detective Ermatinger violated Plaintiffs' constitutional rights "when he distributed information from DPD files during the

---

[16] The Court need not address the remaining elements of Aubrey's *Monell* claim.

course of his employment with DPD and following his termination of employment . . . ." *Id.* ¶ 400 (91–92).

To support this claim, Plaintiffs allege three different policies of City of Dallas: (1) "distribut[ing], to the media, confidential information from an active murder investigation"; (2) inadequate training; and (3) inadequate supervision. *Id.* ¶¶ 405–06 (92–93). City of Dallas, however, again asserts that Plaintiffs have not identified "an official custom or policy" to support their claim. Doc. 127, Mot. to Dismiss, 23. Below, the Court addresses each of Plaintiffs' theories and concludes that none supports the imposition of *Monell* liability upon City of Dallas for the distribution and misuse of confidential information.

<em>a.    Distribution of confidential information to the media</em>

In this § 1983 claim, Plaintiffs suggest that City of Dallas has a policy or custom of distributing confidential information pertaining to a pending murder investigation. Doc. 121, TAC, ¶ 406 (93). Like the rest of Plaintiffs' § 1983 claims discussed in this Order, this claim seeks to impose *Monell* liability upon City of Dallas based upon a custom—not an official policy of City of Dallas.[17]

But in their complaint, Plaintiffs allege only Detective Ermatinger's conduct to support the inference of a custom. *See id.* ¶¶ 395–407 (90–93). Though Plaintiffs also mention that "the City," in addition to Detective Ermatinger, "distributed the confidential information," *id.* ¶ 403 (91), Plaintiffs provide no factual support for their suggestion that other City of Dallas employees

---

[17] Though Plaintiffs cite to several policies of City of Dallas in their complaint, they go on to point out that Detective Ermatinger failed to comply with the policies—not to allege that the policies are unconstitutional. *See id.* ¶¶ 398–400 (91–92).

distributed confidential information. *See id.* ¶¶ 395–407 (90–93). The Court will not credit this conclusory allegation. *See Pinedo v. City of Dallas*, 2015 WL 221085, at *6 (N.D. Tex. Jan. 15, 2015) (requiring the plaintiff's allegations of a policy or custom to "contain specific facts") (citations omitted).

Though Plaintiffs attempt to invoke the single-incident exception, see Doc. 140, Pls.' Resp., 23–24, it does not apply here. Rather, the single-incident exception is only applicable when "the actor or actors involved [in the misconduct alleged] had been given official policy-making authority." *Renfro*, 27 F. Supp. 2d at 717 (citation omitted). Plaintiffs do not allege any facts to suggest that Detective Ermatinger is an official policymaker, nor that an official policymaker was involved in the alleged distribution of confidential information. *See* Doc. 121, TAC, ¶¶ 395–407 (90–93). In fact, Plaintiffs themselves allege Detective Ermatinger made his post-retirement comments on the investigation "[a]s a private citizen." *See* Doc. 121, TAC, ¶ 252 (55). Thus, the single-incident exception does not apply and the Court concludes that Plaintiffs have not sufficiently alleged an official policy or custom of City of Dallas as to the use and dissemination of confidential information.

b.    *Failure to train*[18]

To support their *Monell* claim based on City of Dallas's alleged disclosure of confidential information, Plaintiffs allege City of Dallas has not adequately trained its detectives to understand: (1) "the significance of confidential information"; (2) that this "information cannot be used for a

---

[18] Plaintiffs also allege that City of Dallas failed to adequately supervise its detectives. *See* Doc. 121, TAC, ¶ 406 (93). As noted above, "[t]he same elements" for a failure-to-train claim "apply to claims based upon failure-to-supervise . . . theories." *E.G.*, 2017 WL 129019, at *3 (citation omitted). Just as Plaintiffs have not sufficiently alleged inadequate training, they have not sufficiently alleged inadequate supervision. Thus, Plaintiffs' failure-to-supervise claim also fails.

purpose" beyond that "which permitted the officer . . . to obtain access to the information"; (3) "that confidential information cannot be inspected by a person who is not authorized to inspect [it]"; and (4) "that confidential information cannot be disclosed to a person who is not authorized to receive the information." Doc. 121, TAC, ¶ 406 (93).

As with Plaintiffs' other failure-to-train claims discussed above, Plaintiffs have not demonstrated the inadequacy of City of Dallas's training procedures. Rather than alleging City of Dallas's training procedures with respect to the distribution of confidential information, Plaintiffs merely state areas in which they believe City of Dallas is deficient in training its detectives. *See id.* Accordingly, Plaintiffs have not sufficiently alleged an official custom or policy based on City of Dallas's alleged failure to train.[19]

Because Plaintiffs have not sufficiently alleged an official custom or policy to support this § 1983 *Monell* claim, the Court **DISMISSES** this claim against City of Dallas.

C.      *Whether Sovereign Immunity Bars Plaintiffs' Malicious Prosecution Claim*

The Court concludes that sovereign immunity bars Aubrey's malicious prosecution claim against City of Dallas. In addition to the § 1983 claims, Aubrey brings a malicious prosecution claim under Texas law against City of Dallas. Doc. 121, TAC, ¶¶ 391–94 (90). This claim arises from DPD's arrest of Aubrey in October of 2016 on prostitution charges. *See id.* ¶¶ 224–39 (51–53). Aubrey alleges that DPD "arrested [him] for harassment purposes only," and that the prostitution charges were ultimately dropped. *Id.* ¶ 238 (53).

---

[19] Because Plaintiffs have not sufficiently alleged inadequate training, the Court need not consider the remaining elements of Plaintiffs' failure-to-train claim.

But City of Dallas contends that it is immune from liability for a malicious prosecution claim, because malicious prosecution is an intentional tort for which the Texas state legislature has not waived sovereign immunity. *See* Doc. 127, Mot. to Dismiss, 22. In his response, Aubrey wholly fails to address this argument, instead stating arguments that City of Dallas has not made. *Compare* Doc. 140, Pls.' Resp., 24, *with* Doc. 127, Def.'s Mot. to Dismiss, 21–23.

The Court holds that Aubrey's malicious prosecution claim is barred by sovereign immunity. The Texas Tort Claims Act "expressly preserves municipalities sovereign immunity to claims for intentional torts." *LeBlanc v. City of Haltom City*, 2011 WL 2222175, at *3 (N.D. Tex. June 7, 2011) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)). Because "malicious prosecution is an intentional tort," City of Dallas is entitled to immunity on Aubrey's claim. *Humphreys v. City of Ganado*, 467 F. App'x 252, 256–57 (5th Cir. 2012) (per curiam). Accordingly, the Court **DISMISSES** Aubrey's malicious prosecution claim against City of Dallas.

D.       *Whether to Grant Leave to Amend*

In their response to City of Dallas's motion to dismiss, Plaintiffs ask the Court for leave to amend their complaint in the event that the Court finds the operative complaint deficient. Doc. 140, Pls.' Resp., 24. But Plaintiffs failed to attach their proposed amended complaint as required under Northern District of Texas Local Rule 15.1(b) for a motion for leave to amend. Indeed, Plaintiffs do not even "state any material facts [they] would have included in the [proposed] amended complaint." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citation omitted).

Additionally, Plaintiffs have now had five chances to sufficiently plead their claims over the course of one year and eight months: they filed one complaint in the Southern District of Florida and four different complaints with this Court. *See supra* Section I.B. Under these circumstances, it is clear

that Plaintiffs "ha[ve] already pleaded [their] 'best case.'" *Brewster*, 587 F.3d at 768 (citation omitted). Moreover, given that one year and eight months have passed since Plaintiffs filed this lawsuit in the Southern District of Florida, the Court finds that Plaintiffs have unduly delayed in seeking to add new allegations, and a sixth bite at the apple would unduly prejudice the remaining Defendants. *See Hinds v. Orix Capital Mkts., L.L.C.*, 2003 WL 21350210, at *3 (N.D. Tex. June 10, 2003) (citation omitted) (instructing district courts to consider "undue delay" and "undue prejudice to the opposing part[ies]" in deciding whether to grant leave to amend). For all of these reasons, the Court **DENIES** Plaintiffs' request for leave to amend.

## IV.

## CONCLUSION

The Court declines to dismiss Plaintiffs' claims on statute-of-limitations grounds. Thus, to the extent City of Dallas seeks dismissal of Plaintiffs' claims on this basis, the Court **DENIES** its motion. Nevertheless, the Court holds that Plaintiffs have not sufficiently pled facts to support any of their § 1983 claims against City of Dallas. Accordingly, the Court **GRANTS** City of Dallas's motion to dismiss (Doc. 127) on this basis and **DISMISSES WITH PREJUDICE** all of Plaintiffs' § 1983 claims against City of Dallas. Further, because Plaintiffs' only remaining claim against City of Dallas, malicious prosecution, is barred by sovereign immunity, the Court **DISMISSES** this claim **WITH PREJUDICE,** as well. Finally, for the reasons already stated, the Court **DENIES** Plaintiffs leave to amend.

SO ORDERED

SIGNED: March 26, 2020.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE